Wilson, J.,
delivered the opinion of the court.
*434 This is an appeal from the judgment of the district court in proceedings therein on appeal from the county court of Arapahoe county in the matter of the probate of a will. The testator, John A. Clough, a resident of Denver, died about July, 1895. He was the owner at the time of his death of a large amount of property real and personal, said to be of great value. He left surviving him, as his natural heirs at law, his widow, the proponent of the will, and two sons, the' contestant and one other, both children by a former marriage. Previous to the marriage between testator and proponent, an antenuptial contract had been entered into by them, whereby it was in substance agreed that neither party should in any event take, control, claim, hold or intermeddle with any of the property real or personal which the other might own at the time of said marriage, or which he or she might thereafter acquire; that such property should forever be and remain the sole and separate estate of the party so owning the same at the time of the marriage, the same to all intents and purposes as if such marriage hadneverbeen had or solemnized; that neither party should inherit from the other, but that all of the property and estate of either party upon his or her death should descend to the heirs at law and next of kin of the party so dying subject to any devises or bequests in the same manner as if the marriage had never been solemnized; and that the survivor should not and would not claim any interest whatever in the estate of the deceased party by virtue of said marriage. Shortly after the death of the testator, there was presented to the county court of Arapahoe county for probate a writing purporting to be his last will. By its terms, after directing the payment of a few small legacies, he devised in trust for each of his sons the rents and profits of a small quantity of realty, which it was claimed was so insignificant in amount and value as to practically result in their disinheritance. To his widow, the proponent, he devised and bequeathed the use of all the rest and residue of his estate, real, personal and mixed, for and during her natural life, the residuary legatees being the trustees of the *435 Colorado Seminary, the Trinity Methodist Episcopal Church of Denver, The Colorado Conference Preachers’ Aid Society, and The Denver Church Extension Society of the Methodist Episcopal Church, societies and corporations existing under the laws of Colorado. In response to a citation from the county court, the contestant appeared and filed a caveat, suggesting the invalidity of the will upon various grounds, but chiefly for the reason that it.was executed under the undue influence of proponent and the residuary legatees. Upon hearing, the writing was held to be the will of the deceased, and was duly admitted to probate. Contestant appealed to the district court. At the hearing in that court, the contestant demanded that the issues be submitted to a jury. The court denied this application as a matter of right, but upon its own motion directed that a jury be impaneled. Upon the conclusion of the introduction of testimony by the contestant, counsel for the proponent ore tenus demurred to the evidence and moved for a probate of the will notwithstanding the evidence that had been introduced. This motion was sustained, the jury discharged, and judgment was entered up affirming the validity of the will and admitting it to probate. From this the contestant prosecutes an appeal to this court.
The first and most material question presented for onr consideration is: Was the contestant at the hearing in the district court upon appeal from the county court entitled as a matter of right to have the issue whether or not the writing was the will of John A. Clough submitted to and tried by a jury? It is requisite to a proper undertanding and determination of this that some inquiry be made into the nature and history of our laws in reference to the probate of wills, as well as the procedure and practice thereunder.
In England, whence both the law and the practice were originally derived, the ecclesiastical courts had sole and exclusive jurisdiction of wills devising personalty. Where real estate was devised, the common law courts had sole and exclusive jurisdiction of the proof of wills, and all matters *436 pertaining to their construction and execution. In the latter courts, with which we are chiefly concerned in the case at bar, where an issue arose whether or not the writing was the will of the testator, it was submitted to a jury upon evidence presented by the proponents and contestants. The chancery court had no jurisdiction in the matter of proof of wills. As was said by Lord Chancellor Eldon in Pemberton v. Pemberton, 13 Ves. 296, “But the authority to declare what is and is not a man’s last will is denied to this court.” Where the question did arise in a court of equity upon questions of disputed facts, it was imperative that the court direct the issue devisavit vel non to he sent out of that court to a court of law and submitted to a jury. This issue was whether the writing was the will of the testator, and it was one at law. Van Alst et al. v. Hunter et al., 5 Johns. Ch. 148; Case of Broderick’s Will, 21 Wall. 509. In the report of the chancery commissioners to Parliament, in March, 1826, it was said: “ In a suit for establishing a will, the heir at law is, by the long established practice of the court, entitled to the issue devisavit vel non.” In this state, however, and in most of the states of the union, a court of probate has been established, and to it has been given exclusive jurisdiction in the first place of matters pertaining to the proof of wills and their execution. The court is a special one, so far as its probate jurisdiction is concerned, and its powers are to some extent defined by statute, based, however, in the main upon the principles established by the old English law and practice. Section 508, Gen. Stats. 1883, gives the county court acting as a court of probate, jurisdiction and determination of questions of law and fact relating to probate matters. Section 3490 requires a person having in his possession any last will to present the same to the county court within ten days after the death of the testator. Section 3494 provides that upon the production of a will for probate, the court shall issue a citation to the widow or husband and heirs at law of the testator, requiring them to attend the probate of such will before the' court at a day fixed therein. Sec *437 tion 3498 requires that the witnesses of the will shall he summoned to appear, and compels their appearance. The next succeeding section, 3499, is as follows:
“ If, upon the hearing of such proof, it shall satisfactorily appear by the testimony of two or more of the subscribing witnesses to such will, that they were present and saw the testator, sign such will, and attested the same at his request, or that he acknowledged the same to be his last will, and that they believe the testator to be of sound mind and memory at the time of signing and acknowledging the same, the court shall admit the same to probate and record; Provided, that no proof of fraud, compulsion or other improper conduct be exhibited, which, in the opinion of the court, shall be deemed sufficient to invalidate or destroy the same, and every will, testament or codicil, when thus proven, shall be recorded by the clerk of the county court, in a book to be provided by him for that purpose, and shall be good and available in law, for the granting, conveying and assuring the lands, tenements and hereditaments, annuities, rents, goods and chattels therein and thereby given, granted and bequeathed.”
These sections contain all the statutory provisions in reference to the probate of wills. It will be observed that the court is not required in express terms to hear the testimony of any witnesses except those who attested the will. No-provision is made for a contest. Upon the hearing of “ such proof,” that is the testimony of the attesting witnesses that the will was properly signed and attested, and that they believe the testator was of sound mind and memory at the time it was signed and acknowledged, the court is compelled to admit the will to probate and record, provided that no proof of fraud, compulsion or improper conduct be exhibited, which in the opinion of the court shall be deemed sufficient to invalidate or destroy it. It is true that the proviso in the section contains an implied permission, presumably to interested parties, to offer testimony tending to invalidate the will on account of fraud, compulsion or other improper conduct, and there is of course implied authority to receive it, but no *438 practice or procedure is specified, and no provision made for a hearing or trial in which the persons offering such evidence shall have a standing as parties. It will be seen too, that no authority is given for the exhibition or reception of any proof impeaching the validity of the will for want of testamentary capacity by the testator. In either case, a would-be contestant therefore, although present in obedience to the citation of the court, would have no standing in the court as a party to a suit, with the rights and privileges thereto attaching, if it be held that the practice and procedure in this respect are only such as are in terms permitted or directed by the statute. The authority therefor is derived from the practice which prevailed before the enactment of the statute, so far as it has not been changed thereby nor become inconsistent therewith. The mode of procedure and practice on the hearing of probate of wills is not expressly provided by statute.
While it is true that the county court in the probate- of a will will hear such pertinent evidence as may be offered bearing upon its validity, the proceeding does not take on, nor could it, the form and semblance of a legal contest between hostile parties. It was, while in that court, in the nature of a proceeding in rem. In the Matter of Storey, 120 Ill. 254.
The proceeding in the county court in the first instance is summary and is not intended to involve the consideration and determination of the intricate questions of law and fact bearing upon the validity of a will. It is made snmmary because, in the interest both of heirs and creditors, it is important that some one should have the legal authority to take charge of and care for the property involved.
Thus far, it will be seen, an heir desiring to contest and avail himself of all of his rights to have all matters bearing upon the validity of the will fully adjudicated, has had no opportunity to do so. Section 508 of the General Statutes as amended in 1891, provides, however, that from any and all decisions of the county court in probate matters, an appeal will lie to the district court to be prosecuted in the same manner as appeals in civil or law cases in such county courts. *439 Section 500, Gen. Stat., as amended by the laws of 1885, p. 159, provides that in such appeals the proceedings in the appellate court shall be in all respects de novo, and that they shall be conducted in the same manner as if originally brought in the district court. There is no question about the requirement that the proceedings shall be de novo, but it is not a suit or action either in law or equity, and in its present form could not have been originally brought in the district court. It is a special proceeding, a proceeding in rem, and the mode of procedure therein is not specifically prescribed by the statute. For these reasons, it does not come within the provisions of code, sec. 173, which designates what issues shall be tried before a jury, and what not. The words “ in other cases ” refer in our opinion to other civil actions or suits and not to special proceedings created and regulated by statute. The sole issue to be tried and determined was one at law but not of law, and therefore was not by tire terms of that section or by the usual practice, to be tried by the court. The issue was one of fact: Was the writing the last will of John A. Clough, as it purported to be ? The code substitutes a code procedure for the common law and chancery practice of Colorado. Blatchley v. Coles, 6 Colo. 82. But it does not embrace a special statutory proceeding of this or a similar kind, as for instance a condemnation proceeding under the Eminent Domain Act, which was neither an action at law nor a suit in equity.
“ The vital idea of an action is a proceeding on the part of one person as actor against another for the infringement of some right of the first before a court of justice in the manner prescribed by the court of law.” Bouvier’s Law Dictionary, tit. “ Action; ” Jones v. Bank of Leadville, 10 Colo. 479. In this proceeding, that vital and essential quality was wholly lacking. “ The thing before the court and about which it was to judicially inquire, was a paper, in form a testamentary disposition of property. If it was a will, certain legal consequences would follow. If it was not a will, certain other legal consequences would follow.” In the Matter of Storey, supra.
*440 The proceeding was not mentioned in the code and there was no specific requirement of the statute as to how it should be tried. In such case the court should have been controlled by the common law practice. The issue was in its nature devisavit vel non, and the contestant was entitled to a jury trial, as a matter of right.
It is true that section 23 of the Colorado bill of rights imposes no restriction upon the legislature in respect to the trial of civil causes. Huston et al. v. Wadsworth, 5 Colo. 216. And that in civil causes, trial by jury is not guaranteed by the state constitution. Corthell v. Mead, 19 Colo. 388. It is equally true, however, that where the constitution, code, and statute controlling the proceedings are silent as to the mode of trial, it will be that in accord with the usage and practice prevailing before the adoption of the constitution, code or statute. Huston et al. v. Wadsworth, supra; Proffatt, Jury Trials, § 86, et seq. In case there is no previous usage or practice, the proceedings including the mode of trial would come within the provisions of the statute declaring that the common law of England, so far as applicable, shall be the rule of decision, and be considered as of full force. Gen. Stat. sec. 197.
Tins case may be viewed in another light, which however brings us to the same conclusion. Sec. 3508, Gen. Stat. reads as follows:
“ In all actions wherein the execution or contents of any last will may be brought in question, the record of the probate of such will, or an exemplified copy of such record, shall be conclusive proof of the execution and contents thereof, both as against the persons summoned, and appearing at the probate thereof and as against all other persons : Provided, that any heir at law or other person interested to contest the said will, who was not summoned by actual service of process and who did not appear at the probate of such will, may at any time within two years after the admitting of such will to probate, appear and by his or her bill in equity, in the district court of the county wherein such will was admitted *441 to probate, or of the county to which such county is attached, for judicial purposes, contest the validity of such will; and thereupon an issue at law shall be directed, whether the writing in question be the last will of the testator or testatrix or not, which issue shall be tried by a jury according to the practice hi courts of chancery in similar cases; but if no such person shall appear within the time aforesaid, the probate, as aforesaid, shall be forever binding and conclusive on all the parties concerned saving to infants, femmes covert, persons absent from the state, or non compos mentis, the like period after the removal of their respective disabilities; and in all such trials by jury, as aforesaid, the recorded testimony of the witnesses examined at the probate of such will may be used as evidence, and have such weight as the jury shall think it may deserve.”
By this it will be seen, an heir at law or other person interested to contest a will, who was not summoned by actual service of process and who did not appear at the probate of the will, may proceed within a certain time by a bill in equity in the district court to contest the validity of the will; and it is specially provided, following the old practice, that an issue at law, clevisavit vel non, shall be directed, and tried by a jury. This is the same and the sole issue to be decided in the proceedings on appeal from the county court on the probate of a will. This proceeding not being an action at law or in equity, as we have held, of itself, and not being subject to the provisions of code, sec. 173, as to mode of trial, it would seem that the provisions of sec. 3508, Gen. Stat. should control. A proceeding under that statute would be the only one which could have been originally brought in the district court involving the same questions, the same issues, and the same relief as in the case on appeal. The very fact of the enactment of this section declaring the issue to be one at law and making its submission to a jury mandatory even though the suit be in equity, is strong evidence of the legislative intent to adhere to the old rule and practice requiring this important and vital issue of fact to *442 be passed upon by a jury in all proceedings instituted or had in the nature of a suit to contest the validity of a will, where the court had jurisdiction to determine.
We are confirmed in the correctness of our views by the fact that the Colorado statutes in reference to wills, administration of estates, etc., were in the main taken from those of Illinois, and so far as they bear upon the questions material to this inquiry are now substantially the same, as they have existed in that state since 1845. A very thorough examination of its judicial reports shows that the uniform practice of the courts in that jurisdiction has been in accord with the views which we have expressed. Hill’s Probate Practice, p. 42; North’s Probate Practice, p. 79; Dickie v. Carter, 42 Ill. 377; Crowley v. Crowley, 80 Ill. 469; In the Matter of Noble, 124 Ill. 269. It is true that no case is cited in which the point has been directly raised and passed upon, but the fact that the universal practice in the courts of that state has been in accord with our holding, and has never been questioned, is entitled to some weight. Mr. North says, “It is the practice to try appeals in these cases by jury.” North’s Probate Practice, p. 79.
The learned judge of the trial court acted upon the erroneous theory that the proceeding was one in equity, and that in accordance with equitable procedure the right to have any issue submitted to a jury was discretionary with the court. On the contrary, it was a de novo trial on an appeal from a decision of the probate court in a special proceeding in its nature ex parte, which did not partake of the character of a trial or proceeding inter partes until it reached the district court. In the Matter of Storey, supra.
Equity had no jurisdiction whatever unless a suit had been instituted in accordance with the terms of sec. 3508, Gen. Stat. It was therefore analogous, at least, to a proceeding at law, and the procedure in such cases, so far as applicable, and so far as not otherwise directed by statute, should have been followed. If a right to a trial of the issues by a jury exists, and we have held that it does, then if demanded in *443 apt time or not waived, the right should be accorded. The verdict of a jury should be had, and when rendered should be treated in the same manner and held to be of the same force and effect as in an action at law. Such is the rule in reference to verdicts in actions to contest wills instituted by bill in equity under the statute, and we can see no reason why a verdict in a proceeding of this character should stand upon 'any different footing. Meeker et al. v. Meeker, 75 Ill. 261; Rutherford et ux. v. Morris et al., 77 Ill. 397. Even if the trial judge had been correct in his theory as to the character and nature of the proceeding, and the submission to a jury of the issues of fact involved had been discretionary with him, a refusal to have done so would not have been in the exercise of a sound discretion. The determination of the facts in a case of this kind, where presumptions are to be raised, inferences drawn, and conflicting evidence to be weighed, including a consideration of the credibility and intelligence of witnesses, is peculiarly within the province of a jury. A charge of undue influence is substantially that of fraud, and it can seldom be shown by direct and positive evidence. While it is true that it must be proved and not presumed, yet it can be and most generally is proven by evidence of facts and circumstances winch as to themselves may admit of little dispute, but which are calculated to establish it, and from which it may reasonably and naturally be inferred. It is this class of cases that it is the policy of the law to commit to the decision of a jury whether it be in a proceeding at law or in equity. “ A jury, composed of the average men of a community, sit together, consult, apply their separate experiences of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given, it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge.” Railroad Company v. Stout, 17 Wall. 657.
The case of Cummins et al. v. Cummins et al., cited from *444 the superior court of Delaware, 31 Atl. Rep. 816, and strongly relied upon by counsel for the proponents, is not in point. That was an appeal to the superior court from the register’s court, which corresponded in its jurisdiction of probate matters to our probate or county court. The procedure was specified by statutes, and these were entirely different from those in this state. The register himself had the power in Ms discretion to submit any question of fact to a jury. Upon appeal the trial was not de 'novo. The superior court was restricted solely to a trial upon the record and evidence as sent up from the register. There was virtually nothing for a jury to try. The practice being thus fixed by statute, the court very properly said, “ This case does not however depend upon the practice and proceedings in England, but upon the constitution and statutes of this state and the decisions and practice thereunder.”
It must be confessed that the question presented being entirely new and not being expressly covered by statute, is one of some difficulty. We are further convinced, however, that our conclusion is in accordance with law by the fact that it is surely in accord with right and justice, with the spirit of our laws, and that it makes consistent law and procedure which otherwise would be inconsistent. It was said by the supreme court of the United, States in the Case of Broderick’s Will, 21 Wall. 509, “The public interest requires that the estates of deceased persons, being deprived of a master and subject to all manner of claims, should at once devolve on a new and competent ownership.” It is with this view our statute provides for a summary probate of a will in the first instance and a notification to the heirs to be present. It would be manifestly unjust, and strange indeed, if the vigilant and attentive heir by responding to this mandate of the court and being personally present at this preliminary hearing, should forfeit his most important right in the event he saw fit to contest. We say advisedly “most important right,” because from time immemorial when the validity of a will is assailed on the ground, as in this instance, *445 of undue influence dependent wholly upon matters of fact, the disputed question was submitted to a jury. To hold that the vigilant heir should suffer the forfeiture of this privilege while his negligent brother, who ignores the notice of the probate court, may come in at airy time within two years and avail himself of the full benefits of it, is contrary to justice, reason, and in our opinion, to law.
The conclusion at which we have arrived that it was reversible error in the court to refuse upon demand of contestant, the submission of the issues of fact to a jury and have a verdict thereon, will necessitate a new trial. At this, there may and probably will be much new and different evidence produced. We therefore deem it inadvisable to express any opinion as to the weight of the evidence preserved in the bill of exceptions. As to the character of the evidence admissible, we will only say generally that in proceedings of this nature, the issues involved cover a wide field of investigation, and being of that kind seldom Susceptible of direct and positive proof, the court should be liberal in admitting evidence of all circumstances, even though slight, which might tend in conjunction with other circumstances to throw light upon the relation of the parties and upon the disputed question of undue influence. This much we feel impelled to say in aid of the court before which the new trial will be had, and in furtherance of a speedy settlement of important litigation in the interest of all concerned.
The judgment is reversed, and the cause remanded for a new trial in accordance with the views expressed in this opinion.-

jReversed.