28  167
17a 435

[No. 3981.]

IN THE MATTER OF THE ESTATE OF SAMUEL SHELL, DECEASED.

1. WILLS—EVIDENCE—UNDUE INFLUENCE.

In a contest of the probate of a will on the ground of undue influence, evidence that while the testator was living with his first wife and about sixteen years before the execution of the will, proponent entered the family circle and by her machinations brought about an estrangement between testator and his wife which led to a divorce and a few years later to a marriage between testator and proponent is too remote to be admitted as tending to prove undue influence in the execution of the will.

2. SAME.

In a contest of the probate of a will on the ground of undue influence evidence of undue influence by proponent over the testator generally or in other matters than the execution of the will in order to be admissible must be connected with direct or circumstantial evidence tending to prove that undue influence existed and that it was exercised at the time the will was executed.

3. WILLS—UNNATURAL—EVIDENCE.

In a contest of the probate of a will the intrinsic character of the will itself may be considered as evidence showing that it was unnatural, and extrinsic evidence to that effect may also be admitted.

4. SAME.

A will whereby the testator left his entire property to his second wife with a request that she should at her death give the same to their two minor children will not be held unnatural because it excluded the children of a former marriage one of whom had been a cripple from infancy, where it does not appear that the infirmity in any respect incapacitated her from earning a livelihood and it does appear that she had been married, and where the recitals of the will which were uncon-tradicted gave as the reasons for not making any provision for any of the children by the first marriage, that the testator had already made ample provision for all except one daughter (the alleged cripple) and

that as to her she had been a source of much annoyance to him during all her life and that he had already given to her mother property which he expected her by her will to give to the said daughter.

5. WILLS—CONTEST—TRIAL BY JURY—DIRECTING VERDICT.

Upon the trial in the district court upon appeal from the county court in the matter of the probate of a contested will, the contestants are entitled to have the issues tried by a jury, but the court may in proceedings of this sort, as well as in ordinary civil actions, where the facts of the case require it, direct a verdict, and a failure to do so would be a palpable evasion of duty.

6. WILLS—UNDUE INFLUENCE.

In the contest of a will undue influence cannot be inferred from motive and opportunity alone, but there must be some testimony, either direct or circumstantial, to show that undue influence not only existed, but that it was exercised with respect to the making of the will.

7. SAME—EVIDENCE.

Where in the contest of a will the only evidence tending to show undue influence was testimony that proponent, the widow and sole legatee, objected to the testator's children by a former marriage visiting him and that he had given as a reason for not visiting them that his wife would not let him and that he had said if it was to do over he would not marry proponent, the evidence wholly fails to show any undue influence with respect to the making of the will and was insufficient to submit the issue to the jury.

*Appeal from the District Court of Arapahoe County.*

Mr. GEORGE W. MILLER and Mr. DANIEL SAYER for appellants.

Messrs. RISING & MARSHALL for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

This is an appeal from the judgment of the district court of Arapahoe county in proceedings on appeal from the county court in which the will of Samuel Shell, deceased, was admitted to probate. Objection to the probate was upon the ground of mental incapacity of the testator and

undue influence over him exercised by his wife, the proponent and executor of the will. On full hearing, the instrument was adjudged valid in both courts.

No question is raised in the briefs as to the testator's mental capacity, and under the evidence no reasonable charge of that kind could be sustained. That feature of the case is, therefore, eliminated. A careful reading of the evidence preserved in the bill of exceptions satisfies us that there is is no legitimate testimony by a competent witness, other than that given by Mrs. Chandler, upon which, by the utmost stretch of the imagination, an argument can be based to sustain the charge of undue influence; and when her testimony is subjected to sound rules of evidence, it will be found that it is lacking in essential elements.

It is true that some of the contestants, those directly interested in the will, were produced, and an attempt (which was thwarted by the ruling of the court) made to elicit testimony of this sort; but such testimony, even if admitted, was incompetent under our statute, and not worthy of serious consideration, even if the ban of the statute did not exclude it. Strictly speaking, fraud and undue influence are not synonymous expressions. Undue influence is, in one sense, a species of fraud, and while there is sometimes—perhaps usually—present elements of fraud, undue influence may exist without any positive fraud being shown. Opposing counsel do not differ as to what constitutes undue influence or the rule governing the admission of evidence to sustain it; and it is only respecting the character and admissibility of evidence introduced and rejected, and the application of the law to the facts, that they disagree.

In the case of *Clough v. Clough*, 10 Colo. App. 433 (51 Pac. Rep. 513), although the requirements of the decision may not have called for the announcement, yet the statement of the rule found in the opinion governing the admission of evidence upon such an issue is substantially correct. The

court says:

"A charge. of undue influence is substantially that of fraud, and it can seldom be shown by direct and positive evidence. While it is true that it must be proved, and not presumed, yet it can be, and most generally · is, proven by evidence of facts and circumstances which, as to themselves, may admit of little dispute, but which are calculated to establish it, and from which it may reasonably and naturally be inferred."

And it was also said that a court "should be liberal in admitting evidence of all circumstances, even though slight, which might tend, in conjunction with other circumstances, to throw light upon the relation of the parties, and upon the disputed question of undue influence."

Applying this test, we are of opinion that the rulings of the district court in rejecting testimony offered by contestants were clearly right. The witness Mrs. Chandler at one time was a member of the family of the testator. He was divorced from his first wife, by whom he had a family of ten children. He died December 16, 1897. The will was executed June 26, 1891. The attempt was made to show that, while testator was living with his first wife, the proponent entered the family circle, and, as a result of her machinations, an estrangement took place between the husband and first wife which afterwards led to the divorce and later to the marriage of proponent and testator.

As near as we can ascertain from the meager abstract, the time to which this occurrence relates was about the year 1874 or 1875, and it would seem that the second marriage took place in 1880, or perhaps later. While it is unwise to lay down any hard and fast rule respecting the time to which this class of testimony must relate, we are of opinion that, under the facts of this case, these circumstances were entirely too remote to be brought within the category of evidence tending to establish undue influence. Cases very

much in point upon this proposition are: *Pierce v. Pierce,* 38 Mich. 412; *Batchelder v. Batchelder,* 139 Mass. 1; *In re Langford,* 108 Cal. 608; *Webber v. Sullivan,* 58 Iowa 260.

But, aside from this objection, the testimony was clearly inadmissible because not only was there no offer to show by competent evidence a continuance of any general influence, supposed to be established by this class of testimony, down to, or near, the time of the execution of the will, but there was no testimony whatever showing that any undue influence was exercised by proponent over the testator concerning the making of the will at or near the date of its execution, or at any other time. Testimony like that rejected, in order to be admissible, or to have any weight or significance, must be connected with direct or circumstantial evidence tending to prove that undue influence existed and that it was exercised at or near the time the will was made. Indeed, none of the proposed evidence tended to show that any influence was exercised at the time the will was executed, and it was properly rejected. Its admission could not be other than prejudicial to the proponent.

2. Another claim of contestants is that the will itself was unnatural,—that is, different from what it might have been expected to be. If the testator had a disposing mind, and was free from undue influence, the mere fact that the will might have been otherwise cannot vacate it. But it is not unnatural. To establish this charge, an attempt was made to show that Martha Finn, a child of testator by his first wife, was a cripple from infancy, and that no provision in the will was made for any of the children of the first marriage, and particularly none for her. The proposition is that the intrinsic character of the will itself may be considered as evidence showing that it was unnatural, and that it was proper to admit extrinsic evidence to that effect. This is true.

It is to be observed, however, that it does not appear to

what extent this child was crippled, or that her infirmity in any respect incapacitated her from earning a livelihood. It would seem she was, or had been, married, and, for aught that appears, her husband was abundantly able to care for her. The will itself contain's testator's reasons for not making provision for any of these children. It states that he had already made ample provision for all except his daughter Martha, the alleged cripple, and that as she had been a source of much annoyance to him during all her life, and since he had already given to his first wife property which he expected her, by her will, to give to Martha, he omitted her now from the list of recipients of his bounty.

Neither below nor upon this review was an attempt made to controvert these facts, and for the purposes of this case we may presume them to be true. Assuming the truthfulness, therefore, of the facts which actuated testator in not making provision for the children ·of his first wife, there is nothing about this will that is at all unnatural. Indeed, it was just and praiseworthy. If such provision had already been made for the older children, then it was entirely proper for the testator to give, as he did, his entire property to his second wife, with a request that she should, at her death, give the same to his two minor children, the issue of the second marriage.

3.   At the close of the testimony for contestants, the court directed the jury to find a verdict for the proponent, and of this action contestants now complain. Under the decision of this court in *Clough v. Clough.* 27· Colo. 97, S. C., 10 Colo. App. 433, it was held that upon the trial in the district court upon an appeal from the county court in the matter of the probate of a contested will, the contestants were entitled to have the issues submitted to a jury. But it does not follow that in no case is it proper for the court to direct a verdict. The court may, in a proceeding of this sort, as in an ordinary civil action, when the facts of the case require it,

direct a verdict, and a failure to do so would be a palpable evasion of duty. If there is no evidence at all to sustain the charge of undue influence, it would be the clear duty of the court to direct a jury to that effect, and the rule governing in such cases, as stated in *Lord v. Pueblo S. & R. Co.*, 12 Colo. 390, is applicable here. If the evidence, in the most favorable light in which it may reasonably be considered in behalf of the contestants, shows that no undue influence was exercised by proponent, and if the case had been submitted to the jury upon that evidence and they had returned a verdict in favor of contestants the court would have been obliged to set it aside as manifestly against the weight of the evidence,—then the court might properly, in the first instance, direct the jury to find in favor of proponent.

It is true that, if the question depends upon inferences to be drawn from a variety of facts and circumstances, in the consideration of which there is room for a substantial difference of opinion between intelligent, upright and reasonable men, then the question should be submitted to the jury under appropriate instructions, even though there be no conflict in the testimony.

Tested by these considerations, we are of opinion that this case ought not to have been submitted to the jury. The only evidence bearing upon this question is to be found in the testimony of the witness Chandler. She testifies that some time in 1890 she met the proponent in a store and asked the latter how her husband was, to which the proponent replied that he was very poorly. Mrs. Chandler then remarked that she would like to visit him, but was given to understand that proponent preferred that his family (of which the witness Chandler seemed to consider herself a member) would stay away from the house, for it made him worse whenever any of them came. Mrs. Chandler also says that at one time she met testator on the street car and inquired of him as to his health and asked him if he was

coming over to see her as had been promised, to which he replied that he could not come on account of his wife, and that she would not let him. Mrs. Chandler also says that at one time Mr. Shell remarked to her that if he had this thing to do over (meaning the marriage with his second wife) that he would not do it again, and that he forgave Mrs. Chandler for marrying contrary to his wish.

It strikes us that, if this testimony tends to prove anything, it is that proponent did not wish the witness to interfere with her opportunity of influencing the testator; but the claim is made that it has some tendency to establish the proposition that the proponent not only had the power of unduly influencing the testator, but that she exercised it respecting the will. To this we reply, that we consider it too well settled to need the citation of authorites that undue influence cannot be inferred alone from motive or opportunity, that there must also be some testimony, either direct or circumstantial, to show that undue influence not only existed, but that it was exercised with respect to the making of the will itself. This testimony does not, in any degree, tend to show that proponent ever exercised any undue influence, or any influence at all, over the testator in relation to the making of the will. It may, and possibly does, tend to show that proponent exercised her influence over testator to dissuade him from associating with witness, and from an examination of her testimony, we are disposed to believe, and constrained to remark, that this influence, instead of being undue, was wholesome and salutary.

Had this testimony been coupled with a legitimate offer to show, either directly or by way of inference from legitimate testimony, that proponent had the opportunity to wield undue influence, or did exercise it, with respect to the making of a will, a different question might arise. True, it is claimed in argument by contestants that an offer was made to show that the influence obtained by proponent over her

husband continued to the time of his death; but we find up-
on examination of the abstract to which counsel refer that
no such offer was made, and the contention in that respect
is not worthy of serious consideration.

To summarize our conclusion: It is not putting it too
strongly to say that the court would have been direlict in
duty had any question of fact been submitted to the jury.
There is not a particle of legitimate and competent evidence
to sustain the charge of undue influence, and had the cause
been submitted and a verdict for contestants returned, we
would have no hesitation in setting it aside upon the ground
that there was not a particle of proof to sustain it.

In this connection the remarks of Mr. Justice Paxson in
*Cauffman v. Long*, 82 Pa. St. 72, are pertinent, and com-
mend themselves to our judgment as a wholesome expression
of the law that should control the action of courts in ques-
tions of this character:

"The growing disposition of courts and juries to set aside
last wills and testaments, and to substitute in lieu thereof
their own notions as to what a testator should do with his
property, is not to be encouraged. No right of the citizen
is more valued than the power to dispose of his property by
will. No right is more solemly assured to him by the law.
Nor does it depend in any sense upon the judicious exercise
of it. It rarely happens that a man bequeaths his estate to
the entire satisfaction of either his family or friends. In
many instances, testamentary dispositions of property seem
harsh, if not unjust, the result, perhaps, of prejudice as to
some of the testator's kindred, or undue partiality as to oth-
ers. But these are matters about which we have no concern.
The law wisely secures equality of distribution where a man
dies intestate. But the very object of a will is to produce
inequality, and to provide for the wants of the testator's
family; to protect those who are helpless; to reward those
who have been affectionate, and to punish those who have

been disobedient. It is doubtless true that narrow preju-
dice sometimes interferes with the wisdom of such arrange-
ments. This is due to the imperfections of our human na-
ture. It must be remembered that in this country a man's
prejudices are a part of his liberty. He has a right to them;
he may be unjust to his children or relatives; he is entitled
to the control of his property while living, and by will to di-
rect its use after his death, subject only to such restrictions as
are imposed by law. Where a man has sufficient memory and
understanding to make a will, and such instrument is not the
result of undue influence, but is the uncontrolled act of
his own mind, it is not to be set aside in Pennsylvania with-
out sufficient evidence, nor upon any sentimental notions of
equality."

The foregoing is as applicable in Colorado as in Penn-
sylvania. The judgment of the court below is right and
should be affirmed.

*Affirmed.*