Wilson, P. J.
In October, 1898, Mrs. Lizzie DuBois, a widow *430 sixty-two years of age, died possessed of property valued at about $12,000.00. Her sole heirs at law were four grandchildren, all minors, the children of a deceased daughter, her only child, who are defendants in error herein as contestants of the will of the deceased. Soon after the death of Mrs. DuBois the plaintiff in error presented to the county court for probate what purported to be her last will and testament, executed about four weeks before her death. By the terms of the will, after directing the payment •of two small bequests of $200.00 each, one to her “faithful nurse and housekeeper” and the other to her brother, the one-half of the residue of all her property was bequeathed to her four grandchildren before mentioned in equal proportions, the same to be turned over to them as they should each become of full legal age. The remaining one-half was devised to the plaintiff in error with the remainder at his death to his two children. The plaintiff in error was designated as executor of the will without bond. Neither Blackman nor his children were of kin to the testatrix, and the father had been for several months prior to her death her agent and attorney in fact in the management of her property. In response to the citation issued from the county court the defendants in error, the grandchildren and natural heirs of the deceased, appeared and filed objections to the probating of the will on the ground that at the time of Its alleged execution the testatrix lacked testamentary capacity, and also that it was executed through the undue and improper influence of the plaintiff in error, Blackman. Upon hearing in the first instance in the county court it was found that the will should be admitted to probate, and from this appeal was taken by the defendants in error to the district court. There trial was to a jury, whose verdict was in favor of the "contestant's;' In response to' two several interrogate *431 ries submitted the jury found that the testatrix was of sound mind at the time of executing' the will, but that undue, influence was exercised over her by the proponent, Blackman, to procure the making of the will. The general verdict was that the will was not the will of decedent. Judgment was thereupon rendered declaring the instrument not the will of decedent and refusing it probate, and the plaintiff in error brings it here for review.
On the day of the commencement of the trial, but before the jury was sworn, the proponent filed a motion to dismiss the appeal on the ground that the appeal bond, which ran to the estate of Lizzie DuBois, was not a bond with proper parties nor one upon which suit could be maintained by the proponent. The motion was denied ,and this is assigned for error. Waiving the question as to whether this motion even if well founded at all was interposed in proper time —the appellee having previously entered his general appearance and the motion not being made until the very day the ease was set for trial and had commenced —we do not think- that there was error in denying it. In an ordinary action there must be a plaintiff, one who institutes the suit, and a defendant. Upon appeal in such cases the statute requires, that the bond shall run to the adverse party but the proceeding under consideration is totally unlike an ordinary action in many respects. The proponent who produces the will may not be a party to the proceeding, indeed, may have no interest whatever in it. The statute requires that any person having in possession any last will shall within a certain time after the death of the testator present the same to the county court of the county for probate. — Gen. Stats., sec. 3490; Mills’ Ann. Stats., sec. 4661. But no statute requires that he shall thereby become a párty to a suit or to any proceeding by which he might become-liable for any costs. *432 It is immaterial by whom a will is presented. — In re Will of Storey, 120 Ill. 249. In fact, there are no parties to the proceeding in a county court to probate a will. When the will is produced the court may proceed of its own motion. The proceeding is in rem. The judgment is in rem, and is not for or against any party. From it any person interested may appeal. —In re Storey, 20 Ill. App. 188.
In this ease the court after declaring that the proceeding and judgment were in rem, said: “And if so, how can the proceeding be said to be inter partes¶ The judgment is' what determines and it is simply a declaration on the will and not a judgment for or against appellant or any other person interested. The appeal is the method provided by law by which the circuit court gets jurisdiction to pronounce a judgment in the matter. It is not an appeal for the purpose of reviewing the judgment of the court below, but is the transferring of the case into a forum where it is to be heard de novo, on original evidence, and where evidence may be introduced which is not competent on the hearing in the probate court. The statute gives to any party in interest the right to so transfer the case by appeal, but when once in the circuit court the party so bringing it into court stands in the same relation to the proceeding as any other parly in interest. The question in the circuit court as in the probate court is simply will or no will, and the judgment of the court when rendered unless reversed or set aside in some proceeding for that purpose, is binding on all persons whether in any manner they appear as formal parties on the record or not.. On the trial the parties may arrange themselves upon the issue as in favor of or in opposition to the pro *433 bate of tbe will, and all those who seek to have the will admitted to probate become proponents, and those who oppose it become contestants.”
In Fuller v. Estate of Fuller, 7 Colo. App. 556, this court, in considering the statute controlling appeals from county courts in probate matters (Laws 1891, p. 109, sec. 3; 3 Mills’ Ann. Stats., sec. 1097) held that an appeal in such cases even when taken by an executor or administrator was in effect the appeal of the estate. This being true, we think it reasonably and logically follows that in a proceeding of this kind where there is no executor or administrator and which is not a civil action having parties plaintiff and defendant, the party adverse to the appealing contestants, if there be any at all, is the estate of the decedent upon which administration is sought. There can be no executor until after the will is probated and hence it would seem'within reason that the party adverse to the contestants could be the estate of the decedent only until probate had been finally effected. In a proceeding to probate, the costs thereof are taxable against the estate, not against the person who had possession of the will and who presented it for probate. In an appeal by contestants the only object of an appeal bond is to protect from the payment of costs the person or party who might become liable therefor by reason of the appeal and that one is the estate. In our opinion the court properly denied the motion to dismiss.
It is also alleged for error that the court improperly overruled a challenge for cause of counsel appearing for the proponent, to two jurors on examination upon their voir dire. Whether this was error or not requires no discussion and is immaterial, because it does not appear from the record that even if error, the proponent was prejudiced thereby. Neither of the two jurors was accepted or served on *434 the jury' It does not appear even that they were peremptorily challenged by the proponent, much less that the proponent was compelled by this action of the court to exhaust his peremptory challenges upon these two jurors. Even though the court erred in failing to sustain the challenges for cause, unless it should appear that the proponent was compelled thereby to accept the disqualified jurors or to exhaust the peremptory challenges allowed to him in order to get rid of them, he cannot complain. The error was without prejudice to hirm
The chief complaint and contention of the proponent is that the evidence presented and upon which the jury based its verdict sustaining the charge of undue influence was insufficient by reason of its lacking in that affirmative and positive character which is claimed to be necessary. It follows from the very nature of the thing that evidence to show undue influence must be largely in effect circumstantial. It is an intangible thing which only in the rarest instances is susceptible of what may be termed direct or positive proof. The difficulty is also enhanced by the fact universally recognized that he who seeks to use undue influence' does so in privacy. He seldom uses brute force or open threats to terrorize his intended victim, and if he does he is careful that no witnesses are about to take note of and testify to the fact. He observes, too, the same precautions if he seeks by cajolery, flattery or other methods to obr tain power and control over the will of another and direct it improperly to the accomplishment of the purpose which he desires. Subscribing witnesses are called to attest the execution of wills and testify as to the testamentary capacity of the testator and the circumstances attending the immediate execution of the instrument, but they are not called upon to testify as to the antecedent ■ agencies by which the execu *435 tion of the paper was secured, even if they had any knowledge of them which they seldom have. Only general rules concerning the amount and character of evidence required to establish undue influence in the execution of a will can be laid down. As to what is sufficient must depend upon the facts and circumstances of each particular ease. These general rules have been stated and restated in many hundreds of different cases in the courts of every jurisdiction considered authority in this country. Different language is used by the different courts, but one main underlying principle, whatever phraseology, is found in all and that is, the evidence required to establish it need not be — indeed cannot be — of that direct, affirmative and positive character which is required to establish a tangible physical fact. The only positive and affirmative proof required is of facts and circumstances from which the undue influence may be reasonably inferred. No special reference to these authorities is required, because the rule in its controlling respect which we are now discussing has been clearly stated and positively settled by recent adjudications of both the appellate courts in this state. In this court it was said: “A charge of undue influence is substantially that of fraud, and it can seldom be shown by direct and positive evidence. While it is true that it must be proved and not presumed, yet it can be and most generally is proven by evidence of facts and circumstances which as to themselves may admit of little dispute, but which are calculated to establish it and from which it may reasonably and naturally be inf erred. ”—Clough v. Clough, 10 Colo.App. 443. This language has been quoted by the supreme court' in a recent case and expressly approved.—In re Shell’s Estate, 28 Colo. 167, 63 Pac. 413.
•It was also said by this court in the Clough case and likewise expressly approyed by the supreme *436 court in the Shell Estate case: “As to the character of the evidence admissible, we will only say generally that in proceedings of this nature the issues involved cover a wide field of investigation, and being of that kind seldom susceptible of direct and positive proof the court should be liberal in admitting evidence of all circumstances even though slight which might tend in conjunction with other circumstances to throw light upon the relation of the parties and upon the disputed question of undue influence.” Upon the hearing in the district court many witnesses were examined and the record of the testimony is very lengthy, covering six hundred folios. From this fact therefore as well as from the nature of the evidence it would be utterly impracticable even if necessary to give even a summary of it in this opinion, a full and lengthy statement being required if any should be given. We deem it sufficient to say that after a thorough reading and consideration of all the evidence received we think it amply sufficient to sustain the verdict of the jury. It is possible that in eases of this kind where the province of the jury is to draw conclusions from conceded or undisputed facts the ordinary rule that this court will not review the evidence nor distrub a verdict when rendered upon conflicting evidence and there is sufficient to support it, does not apply. It' is equally true, however, that in these cases the verdict of the jury is of especial importance and should not be disregarded except for grave reasons clearly apparent. “A jury composed of the average men of the community sit together, consult, apply their separate experiences of life to the facts proven and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer conclu *437 sions from admitted facts thus occurring than can a single judge.”—Railroad Co. v. Stout, 17 Wall. 657.
It is obvious, even to the most common understanding, that this is especially true in cases of the probate of wills, where the question to be determined is whether the instrument was executed under and by reason of the undue influence of another. It involves the consideration of a great many facts and circumstances similar to those which the average citizen encounters in everyday life, and from which he is fully as competent, if indeed not more so, to draw a reasonable conclusion as the most learned judge.
Counsel for plaintiff in error complain of some of the instructions to the jury, which were thirteen in number, eight of them being given at their special instance and request. In argument they chiefly attack the one instruction, given at the instance of the contestants, which reads as follows:
“7. You are further instructed that in determining the issues submitted to you under the instructions herein, you should carefully look to all the evidence in this case, and in so doing you should take into consideration the physical condition of the deceased, arising from age, sickness, suffering, by reason of disease or otherwise, or any other cause; the condition of her mind at and before the time of the execution of the will in controversy; the execution of the will and its contents; the situation of the parties present when the will was executed; the relations existing between her and the parties respectively herein at and before the execution of the will in controversy; her family and connections; the terms upon which she stood with them; the claims they or any of them might have had upon her bounty by reason of blood relationship, or otherwise; the condition and relative situation of the legatees and “devisees named in the will; the situation of the testa *438 trix herein and the circumstances' under which the will was made; the condition she was in by reason ■of her being under the influence of opiates or narcotics, if you find that she was, at the time of the execution of the will, under the influence of opiates and narcotics, and in brief, every fact or circumstance which tends to throw any light upon the question submitted to you.”
We think the instruction was entirely proper under the rule announced in the Clough case which •we have cited. The evidence as to each and every one of these facts, conditions and circumstances enumerated in the instruction the jury were entitled to consider, and should have considered. It is true no one of them was probably sufficient to have sustained a verdict of the jury either dfor or against the will, and the jury were not so told. They were told simply that in determining the issue submitted to them it was proper for them and they should consider all of these matters in connection with all other evidence. It is not in our opinion at all open to the charge made by counsel that it in effect told the jury to put themselves in the testatrix’s place, and make her will for her. Especially are we confirmed in this conclusion, when as it is the duty of this court to do, we consider this instruction in connection with the others given. Taken as a whole, the instructions stated the law applicable clearly and fully, and were indeed unusually free from error. To guard against the danger which it was apparent counsel for proponent most seriously dreaded, the jury were told in forcible and plain language that the undue influence which would be sufficient to invalidate the will must b.e such as to destroy the free agency, and substitute the will of another for that of the person acting; which compelled the testatrix to do that which was against her ydll, from fear, or by constraint, or as *439 the result of fraud practiced upon her; that in fact, the undue influence must have been such .as to have, destroyed the free agency of the testatrix at the time, the will was made. The court further told the jury that the influence acquired over a testator hy kind offices unconnected with any fraud or contrivance could never alone he any good ground for setting aside a will, and that in this case if the jury believed that the disposition of property made hy the testatrix in her will to the proponent was induced hy her affection, gratitude for past kindness, or esteem for him, then it became their sworn duty on this point to find in favor of the will. The jury were further told that any woman of mature age, who at the time of making her will had no husband living, whether she had children or grandchildren or not, had an absolute right to dispose of all or any of her property by her will to any person she pleased, disregarding entirely, the expectations of her natural heirs, and disregarding any statements previously made of her intention to leave it to her natural heirs; that they had no right to question the wisdom or assume the folly of the disposition which the testatrix chose ' to make of her' property; that they had no right to avoid the will because they might think she had no sufficient excuse for giving a large share of it to the proponent, nor because it was not such a will as they might think' she ought to have made; that' if she made the will without undue influence, and while mentally competent to know what she was doing, her right was absolute to give it to any person she chose.
The general and controlling rules and principles in proceedings of this character to which we have referred as being announced and established in this' state are supported hy the current of authority in. other jurisdictions. We refer to a few of the Leadings and best considered cases.—In re Will of Budlong, *440 126 N. Y. 423; In re Liney’s Will, 13 N. Y. Supp. 551; Denison’s Appeal, 29 Conn. 399; Harrel v. Harrel, 1 Ky. 203; Tyler v. Gardiner, 35 N. Y. 559; Chaplin on Wills, pp. 96, 97, 212; Cassoday on Wills, § 484, et seq.
We see no material error, and the judgment will he affirmed. Affirmed.