[No. 8366.]

## CITY AND COUNTY OF DENVER V. MERCHANTS BISCUIT COMPANY.

1. BILL OF EXCEPTIONS—*Need Not Present All the Evidence.* Where the sole question is as to the propriety of a directed verdict, it is only necessary to make it appear that the party complaining was entitled to go to the jury, so that to direct the verdict was improper. (240.)

2. TRIAL—*Directed Verdict—Where Proper.* Only when the evidence, with all the inferences therefrom justly deducible, is insufficient to warrant a verdict against the party moving for the direction. (240, 241.)

Action against a municipal corporation for negligence in fixing the channel of a water course, and in the plan for regulating the capacity of

such channel. Evidence examined and held to entitle defendant to go to the jury. A directéd verdict set aside. (241-243.)

3. —— *Questions for Jury.* The credit of witnesses, the weight to be accorded to the testimony, and the inferences to be drawn therefrom, are for the jury. (243.)

4. ACT OF GOD—*An Unprecedented Storm*, is a calamity which a municipal corporation is not under duty to anticipate, in fixing the channel of a water course through its limits. (242, 243.)

*Error to Denver District Court.* Hon JOHN A. PERRY, Judge.

*En Banc.*

Mr. I. N. STEVENS, Mr. G. Q. RICHMOND and Mr. J. J. LIEBERMAN, for plaintiff in error.

Mr. T. J. O'DONNEL, Mr. J. W. GRAHAM and Mr. CANTON O'DONNELL, for defendant in error.

Opinion by Mr. Justice TELLER.

The defendant in error brought suit against the plaintiff in error to recover damages caused by the high water in Cherry Creek on July 14, 1912, which damages are alleged to have been the result of the negligence of the City "in its fixing of a channel for Cherry Creek within the City," and failure to exercise ordinary care and prudence "in adopting a plan to regulate the size, character, and carrying capacity of said channel."

After a trial lasting some weeks the court instructed the jury to find for the plaintiff.

The city alleges error in the judgment entered upon the verdict thus directed.

The defendant in error contends that we cannot connot consider the errors assigned because the certificate to the bill of exceptions does not state specifically that it contains all the evidence introduced on the trial.

In our view of the case it is unnecessary to determine whether or not the certificate should be interpreted as coun-

sel for defendant in error contend. The principal error assigned is that the direction for a verdict was not justified, and upon that question it is not always necessary to have the entire evidence before us.

In *Leslie v. Standard Sewing Machine Co.* 39 C. C. A. 314, the court points out that while all the evidence must be preserved in the record when the question is as to the sufficiency of the evidence to support the verdict or finding, when the inquiry is as to the correctness of a directed verdict it is sufficient if the bill of exceptions contains evidence which would justify a verdict in favor of the defeated party.

To the same effect is *I. C. R. R. Co. v. O'Keefe*, 154 Ill. 508.

The bill of exceptions contains an abundance of evidence to meet that requirement.

It remains, then, to consider the alleged error in the court's instruction to the jury to find for the defendant.

When, then, is is within the province of a trial court to direct a verdict?

This court has said:

"if the question depends upon inferences to be drawn from a variety of facts and circumstances, in the consideration of which there is room for a substantial difference of opinion between intelligent, upright and reasonable men, then the question should be submitted to the jury under appropriate instructions, even though there be no conflict in the testimony." *In re Shell's Estate*, 28 Colo. 173, 63 Pac. 415, 53 L. R. A. 387, 89 Am. St. 181.

In a later case this court said:

"Where the circumstances are such that men of ordinary intelligence may honestly differ as to the question of negligence, it must be left to the jury, and it is always a question to be determined by that body when the measure of duty is ordinary and reasonable care." *Rimmer v. Wilson*, 42 Colo. 180, 93 Pac. 1110.

A case may be withdrawn from the jury only when the evidence, conceding to it all the inferences which the jury could justifiably draw therefrom, is insufficient to warrant a verdict against the party moving for such withdrawal. *Pleasants v. Fant,* 22 Wall. 116, 22 L. Ed. 780.

The law being as above stated, we are to consider whether or not it was correctly applied to the facts in evidence.

One of the defenses, as stated by the court in its opinion, was that the damage was not caused by the overflow of Cherry Creek, but by the local rainfall that preceded the overflow.

It appears from the evidence that there was an extraordinary rainstorm in the City of Denver on July 14, 1912, beginning about two o'clock in the afternoon and lasting for an hour or more. The water in the Cherry Creek channel was at the ordinary stage during the day, rising rapidly about seven o'clock in the evening, and overflowing the banks an hour or two later.

Plaintiff's damages were due to the flooding of the basement of its factory on West Walnut Street near Ninth Street.

One Laughlin, for the defendant, testified that, on the day in question he lived on Ninth Street, in the block in which plaintiff's factory was situated; that a ditch, known as the Mill Ditch, or Mullen Ditch, ran down Ninth Street past the said factory, and between the factory and his house; that about three or four o'clock that afternoon he observed the water overflowing the banks of the ditch, and flowing, to the depth of a foot or a foot and a half, in the direction of plaintiff's factory, as well as toward his house; thought it might have been three or four inches deep toward the sidewalk on the side toward the factory and deeper toward the ditch; thought the rain continued two hours, but did not know how long the ditch overflowed, nor how long it had been overflowing when he observed it.

Mrs. Huffman testified that she lived on Ninth Street nearly opposite the factory; that she was not at home during the storm, but returned about five o'clock in the afternoon, and found that the Mullen Ditch had overflowed, and that the water of the overflow had been three or four feet deep; that it had come into the house a little and wet the floor; that her house was three or four steps higher than the street; and that the steps had been washed away during the afternoon.

The court said that he had carefully considered the testimony of these two witnesses, and had found nothing in it to justify him in presenting such an issue to the jury. Yet if the jury saw fit to believe the testimony of these witnesses it would at least have justified a refusal to find that the plaintiff had sustained the burden of proving that the damages resulted from the overflow of Cherry Creek. True, plaintiff's watchman testified that there was no water in the basement until 8:30 P. M., but the jury were at liberty to refuse credit to his testimony if they thought proper so to do.

A second defense was that the city was not, in any event, liable for the effects of an unprecedented storm, one which could not reasonably have been anticipated. The court said that was a good defense, if sustained by the evidence.

The city introduced the testimony of many witnesses on this point, comparing the storm of 1912 with storms of other years on the Cherry Creek water-shed, as far back as 1864, the date of the first flood in Cherry Creek after the settlement of Denver, and generally regarded as the greatest flood prior to 1912.

Mrs. Booth testified that she had lived on Cherry Creek, about one half mile beyond the city limits, since 1864; that she was there during the flood of June, 1864, and also about four days after the flood of May, 1864, and knew the high water marks of that flood; that the June flood of 1864 was

greater than that of May in that year, and that the storm of 1912 was much greater than either of the storms of 1864. Her reasons for so believing were given in considerable detail as to width of the water in the stream, and damage done in the vicinity of her home.

Other witnesses who had lived near Cherry Creek for from twenty years to forty-five years testified that the storm of 1912 was the greatest they had ever seen, and there was evidence to show that the high water marks caused by other storms were exceeded by several feet by the waters of 1912.

There was further testimony to the fact that large trees, as much as two feet in diameter, were uprooted and carried away; that farming land to the extent of ten to fifteen acres on one farm, left unharmed by all previously known floods, had been washed away; and the old channel, which had continued since the earliest knowledge of the creek, had been greatly changed in many places. This evidence was relevant to the defense above mentioned; i. e., that the flood was unprecedented; and it was for the jury, considering it in connection with all the evidence in conflict with it, to determine whether or not the facts constituting such defense had been established.

There is, moreover, a conflict of evidence upon these alleged negligent acts of the city, and we cannot agree with the proposition that admissions made by witnesses who were or had once been employed in the engineering department of the city are conclusive against the defendant. Other witnesses contradicted the statements relied upon as admissions, and it was for the jury to say what facts were proved by these conflicting statements.

In our view of the case there was evidence which the jury should have been allowed to consider, and the court erred in directing a verdict.

The judgment is accordingly reversed.

*Judgment reversed.*

Mr. Justice White and Mr. Justice Scott dissenting.

Decided December 6, A. D. 1915. Rehearing denied May 1, 1916. Opinion modified on motion of defendant in error, June 5th, A. D. 1916.