No. 16,612.

ESTATE OF PORTER.
SWARNER *v.* MCINTYRE ET AL.
(240 P. [2d] 516)

Decided January 14, 1952.   Rehearing denied February 4, 1952.

Mr. T. LEE WITCHER, Mr. JOHN STUMP WITCHER, for plaintiff in error.

Messrs. MADDEN & WILSON, Messrs. PHINEAS ROSEN-BERG & WARREN A. DRUMMOND, for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the court.

AN instrument purporting to be the last will and testament of John A. Porter, to whom we hereinafter refer as decedent or by name, was presented for probate by Edith Swarner, sole legatee and devisee thereunder, and herein designated as proponent, or by name. Caveats and objections were filed by several children of a deceased brother, and by the children of a deceased half brother, of decedent. In these caveats it was alleged that decedent was of unsound mind and memory at the time of the execution of the alleged will, and that said instrument was not his voluntary act, but the result of undue influence exercised over him by proponent. Proponent is a child of the half brother of decedent.

Trial was to a jury which returned a verdict by which it determined that the alleged will was not the will of decedent, and judgment was entered denying probate of the instrument. The error specified by proponent in this review is the refusal of the trial court to withdraw from the consideration of the jury each issue presented and the failure of the court to direct a verdict in favor of proponent.

The will in question was dated October 12, 1945 and was signed by decedent while he was a patient in a Canon City hospital. At that time he was about eighty

years of age. He entered the hospital June 17, 1945 for treatment and surgery incident to osteomyelitis "inflammation of the marrow" of the tibia bone of his right leg, from which malady he suffered for many years. After surgery and treatment, and on September 24, 1945, decedent fell and fractured his hip, whereupon he was returned to the hospital for additional care and treatment.

Early in October, 1945 proponent came to Canon City from her home in Kansas, and while visiting Porter at the hospital she caused a screen to be placed between Porter's bed and that of the next patient in the hospital ward, and conversed with Porter in an undertone. Some of her statements were heard by others, but Porter's answers or remarks were not audible to others in the ward. She then secured the services of a lawyer to draft decedent's will. Following his employment by proponent the lawyer interviewed Porter at the hospital. The will scrivener brought the witnesses with him after conferring with proponent. The attorney was not advised by either proponent or decedent of the names of caveators or their relationship to decedent. The attorney was led to believe that caveators' whereabouts were unknown and that they had not been in contact with decedent for a long time. Porter was later adjudged a mental incompetent. He was hospitalized continuously from October 12, 1945 until the time of his death in March, 1947.

Briefly stated, the question here presented for determination is whether the judgment entered on the verdict of the jury is supported by substantial evidence. We are not concerned with the credibility of the evidence offered by contestants. That consideration was the jurors' responsibility, and they were properly instructed, not only regarding the burden of proof, but on the legal requirements involved in the issues of testamentary capacity and undue influence. We have carefully reviewed each instruction given and refused, and

find that the trial court was more than liberal in giving instructions based on proponent's theory of the case.

A dozen or more witnesses were called by both proponent and contestants. The trial court was liberal in allowing evidence to be introduced on both sides of this controversy, consequently the jury had a complete picture of all matters involved in the issues presented.

As above recited, this aged man for some fifteen years had suffered from the leg condition which resulted in his hospitalization, and that while so afflicted he suffered a fractured hip which necessitated that he be placed in a bed with an extension attached to his leg with a ten or twelve pound weight at the end thereof. All witnesses agree that he was in pain and received various medications, including small doses of morphine. When the alleged will was signed it was necessary that he be propped up in bed to affix his signature; according to the testimony he either could not, or would not, feed himself; and consequently he was fed by the hospital nurses. The conservator of his estate was in charge of decedent's assets at the time of Porter's death. It is amply disclosed by the record that decedent was a quiet, reticent and cooperative individual. His banker testified that Porter was usually very agreeable to any suggestions he (the banker) might make. The day following the execution of the alleged will Porter inquired of another patient in the hospital ward: "What was that paper I signed?" He received no answer. The testimony also revealed that Porter "was very poorly"; "he seemed to be more or less in a coma most of the time, kinda out of his head." That decedent was nervous and in failing health was not controverted. It was proven that caveators had been in touch with decedent and that their addresses were not unknown.

The jury evaluated all of the evidence and determined the facts adversely to proponent. We cannot disturb their findings of fact.

In *Davis v. Davis*, 64 Colo. 62, 170 Pac. 208, it was

stated by our court: "In the consideration of this class of cases [will contests] by courts of review, there are certain well-established rules to be observed. Liberally as to the admission of testimony because of the recognized difficulty, if not impossibility of establishing either undue influence or mental incapacity by direct or positive evidence, such as is required to establish a tangible physical fact, and that the only positive and affirmative proof to be expected or required, is of facts and circumstances from which undue influence or mental incapacity, may be reasonably inferred."

In *Lehman v. Lindenmeyer*, 48 Colo. 305, 109 Pac. 956, the oft-cited case of *In re Shell's Estate*, 28 Colo. 167, 63 Pac. 413, is referred to, and the following quotation therefrom is pertinent: "A charge of undue influence is substantially that of fraud, and it can seldom be shown by direct and positive evidence. While it is true that it must be proved, and not presumed, yet it can be, and most generally is, proven by evidence of facts and circumstances which, as to themselves, may admit of little dispute, but which are calculated to establish it, and from which it may reasonably and naturally be inferred."

Again, in the Davis case, supra, this court said: "In determining whether or not a will contest should be submitted to the jury, every favorable influence [inference] fairly deducible, and every favorable presumption fairly arising from the evidence produced, must be considered as facts proved in favor of contestants. Where evidence is fairly susceptible of two constructions, or if either of several inferences may reasonably be made, the court must take the view most favorable to the contestants. All the evidence in favor of the contestants must for such purpose be taken as true, and if contradictory evidence has been given, it must be disregarded. * * * In this class of cases the verdict of the jury is of special importance, and should not be disregarded, except for grave reasons clearly apparent."

■ There is ample evidence in the record to support the verdict and judgment in this action, and where this exists we recognize that, under oft-repeated decisions of this court, it is our duty to affirm the judgment; accordingly it is affirmed.