In the Matter of the Probate of the Will of Owen Simth, Deceased.

*(Surrogate's Court, St. Lawrence County, Filed July 20, 1893.)*

1. WILL—KNOWLEDGE OF CONTENTS.

Where the deceased was a man of prudence and care, and all the requirements of the statute as to the execution of wills was complied with, it is not to be presumed that he signed or affixed his mark and made a declaration as to what the instrument was without knowledge of its contents, and the court cannot require, on account of his lack of education, that it must be made to appear that the instrument was read to him.

2. SAME—DELUSIONS.

To constitute a delusion, there must be a belief in the existence as a fact of something which does not exist; and such belief must be without basis for its support, springing up without cause in the imagination of the person entertaining it, and become so firmly implanted in the mind as to withstand such evidence and argument as would convince reasonable persons of its falsity.

3. SAME.

When decedent's son was seven years old, decedent came home intoxicated and told his wife he had been told that said son was not his

child, and repeated the story at different times for thirty years, but only when intoxicated. Some years before his death he told the priest the same thing, and in his will disinherited said son. *Held,* that decedent was not the subject of a delusion which would invalidate the will.

Probate of will.

VANCE, S.—The probate of the instruments offered as the last will and testament, and a codicil thereto, of Owen Smith, deceased, is opposed on two grounds:

First. That said instruments were not the last will and testament of deceased because of want of proof of knowledge of the contents at the time of the execution thereof.

Second. Because of the mental condition of the deceased, it being claimed that he acted under a delusion as to the paternity of his son which rendered him incompetent to make a will affecting the interests of such son.

The evidence clearly shows that Owen Smith could neither read nor write, and it does not distinctly appear that either instrument was read to him.

It clearly appears that the deceased exercised more than ordinary care concerning the safe keeping of his will, that he was a careful, prudent, calculating man in all his business transactions, and that at the time of the execution of each instrument he declared the one to be his last will and testament and the other a codicil thereto.

It is not to be presumed that a man of prudence and care affixed his mark to an instrument and made a declaration as to what that instrument was without knowledge of its contents. If any presumption is to be indulged it is that he knew the contents of the paper. All the requirements of the statute as to the execution of the instruments were fully complied with, and this court cannot add another, that because of his lack of education it must be made to appear that the instrument was read to him.

The chief reliance, however, of the contestant is upon his claim that at the time of the execution of the will and codicil

his father was subject to a delusion as to legitimacy of contestant.

The proof shows that Owen Smith and Louisa, his wife, were married at Canton, N. Y., in 1850. That at the time they were in the employ of Minturn Harrison, in whose employ they remained for about a year after marriage. They then commenced housekeeping upon a lot of fifty acres which he held under contract, the purchase price of which was only partially paid. About eighteen months after marriage there was born to them a son, Henry Smith, the contestant, their only child. The couple continued to reside on the lot before mentioned until July 27, 1892, when Owen died. Their possessions had gradually increased until it had become a farm of 125 acres, under good cultivation and well stocked. In addition to this there was owned at the time of his death four or five hundred dollars in money or note.

He was an industrious, careful, prudent man, his only fault aside from the alleged delusion being the indulgence at times to excess in the use of intoxicants.

At some time, it does not appear clearly when, before fifteen or eighteen years ago, there were stories afloat in the neighborhood concerning the Smith family, the nature of which the evidence does not fully disclose, which had come to the ears of Owen.

When Henry was about 7 or 8 years of age Owen came home from Canton intoxicated, and while in that condition informed his wife that he had been told that Henry was not his child. This was repeated several times each year for almost thirty years, the language used being sometimes a positive assertion that Henry was not his child and that his wife had been untrue to him and had connection with other than himself.

He never did so except when intoxicated, and never in the presence of others. Six or seven years before his death he called upon the priest of his church asking advice as to how he should treat his wife in his will, and stated that Henry was not his son, and he did not intend to leave him any of his property.

It does not appear that he ever mentioned his belief as to the illegitimacy of Henry to any person except his wife and his priest.

By the will the contestant is disinherited, which he insists was the result of an insane delusion on the part of the deceased. In order to determine this question it is necessary to determine exactly what a delusion which incapacitates is. Bouvier defines a delusion as "a diseased state of the mind in which persons believe things to exist which exist only, or in the degree they are conceived of only, in their own imaginations, with a persuasion so fixed and firm that neither evidence nor argument can convince them to the contrary." Sir John Nichol, in the celebrated case of Dew v. Clark, 3 Ad. 79, says: "Whenever a patient once conceives something extravagant to exist, which has still no existence whatever but in his own heated imagination, and whenever at the same time, having once so conceived, he is incapable of being, or at least being permanently reasoned out of that conception, such a patient is said to be under a delusion." Judge REDFIELD, in his treatise on wills, says: "A belief based upon evidence, however slight, is not delusion, which rests on no evidence, but upon mere surmise."

All the authorities to which I have had access agree that to constitute a delusion there must be a belief in the existence as a fact of something which does not exist; that such belief must be without basis for its support, springing up without cause in the imagination of the person entertaining it, and become so firmly implanted in the mind as to withstand such evidence and argument as would convince reasonable persons of its falsity.

Was Owen Smith the subject of such a delusion? It is beyond question that he believed that the contestant was not his child, and that such belief was without foundation in fact. But was this belief the creature of his imagination? I cannot but believe from the evidence that "the stories" which were in circulation had much to do with this belief. The gossip of the neighborhood had lodged in his mind a poison, the venom of which, in his sober hours, he was able to restrain, but which,

when reason was driven out by rum, exhibited itself in the charge of unchastity of his wife. It must be remembered that on the first occasion in which she says he mentioned the matter to her he said he had heard that Henry was not his child. The continued repetition of this charge for years in drunkenness produced such an effect upon his mind that he came at last to believe it, and at length he reveals his convictions to his priest.

Thus the element of a delusion, a belief existing without cause, other than the imagination of the deluded, is wanting.

The other element of a delusion, that it must be belief maintained in opposition to evidence and argument that would convince the ordinary mind of its falsity, is also wanting. So far as the evidence in this case goes, it does not appear that the wife whose chastity was impugned, nor the good priest to whom he went for advice, made any attempt by argument or evidence to convince him of his error.

It must be apparent that if Owen Smith heard the report that contestant was not his child and that report was true, he labored under no delusion in regard to the matter; if the report was not true, it was still evidence upon which he could act, however unjust and mistaken his action might be, without rendering what he did the result of insanity. If no such report was heard by him and he never believed his wife to have been untrue to him, then he can be accused of depravity, not of insanity.

Upon all the evidence, I cannot escape the conclusion that at the time of the execution of the instruments offered for probate Owen Smith was not the subject of a delusion in regard to the paternity of the contestant, and the instruments must, therefore, be admitted to probate.