[No. 5316.]
[No. 2954 C. A.]

## SNODGRASS v. SMITH, ADMR.

**1.  Wills—Contests—Direction of Verdict—When Authorized.**

Although the parties in a will contest in the district court on appeal from the county court are entitled to a jury trial on the issues, the court has the same power and is governed by the same rules in directing a verdict as in ordinary civil actions. —P. 62.

**2.  Wills—Contests—Execution—Proof—Presumptions.**

Ordinarily, where a will has been executed under the formalities prescribed by law, and proof thereof has been made by the subscribing witnesses, testator's bare signature to the will is taken as proof thereof, and it will be presumed that the will had been read by or to him, and that he was aware of its contents.—P. 63.

**3.  Same—Burden of Proof.**

The burden of proof is primarily upon the proponent of a will to show its execution in accordance with the requirements of law, and that the instrument is the free and voluntary act of the testator; and, likewise, the burden of showing undue influence is upon the one who asserts it.—P. 63.

**4.  Wills—Contests—Fraud—Undue Influence—Evidence.**

The fact that the scrivener of a will is executor and legatee therein, at most raises a suspicion, strong or weak, or, in some cases, of no force at all, depending upon the attending circumstances, which, in a proper case, should cause the court to require of proponent, in addition to proof of formal execution, other clear and satisfactory evidence, not necessarily that the will was real or by the testator, but that he knew its contents and was free from undue influence.—P. 64.

**5.  Same—Presumptions.**

The existence of an opportunity to exert undue influence over a testator, in itself creates no presumption against his will. —P. 65.

**6.  Same.**

The fact that the proponent of and beneficiary under a will was the cousin, friend, nurse, and business partner of testatrix, did not give rise to a fiduciary relation between them.—P. 66.

**7.  Wills—Contests — Fraud — Undue Influence — Questions for Jury.**

In a proceeding to contest a will on the ground of undue

influence and fraud, evidence reviewed, and held sufficient to require the submission of the issues to the jury.—P. 69.

8. **Wills—Contests—Fraud — Undue Influence — Innocent Legatees.**

Where, in a proceeding to contest a will on the grounds of fraud and undue influence, based on the misconduct of the proponent of and beneficiary under the will, it appears that there are several distinct legacies to obtain, and contestant does not claim that any of the legatees, except proponent, were guilty of any fraud or undue influence, the will should not be refused probate as to the undisputed legacies, without affording such legatees an opportunity to be heard.—P. 69.

9. **Same.**

When, in a proceeding to contest a will on the ground of fraud or undue influence, it appears that there were distinct and independent legacies to others than proponent, and it was not claimed by contestant that any of the legatees, except proponent, who was executor as well as beneficiary, was guilty of any fraud or undue influence, the proponent is in position to object to a directed verdict against the will without affording the other legatees an opportunity to be heard.—P. 69.

*Appeal from the District Court of Teller County. Hon. Wm. P. Seeds, Judge.*

Proceedings for the probate of the will of Jennie Billingsley, deceased, by Mattie Snodgrass, named as executrix therein, in which James Clarence Billingsley appeared as contestant, continued after his death by Curtis J. Smith, administrator. From a judgment refusing probate, proponent appeals.

*Reversed and remanded.*

Mr. C. E. BRADY, for appellant.

Mr. S. S. ABBOTT, for appellee.

Two instruments in writing, one purporting to be the last will of Jennie Billingsley, deceased, the other a codicil to the will, were presented to the county court of Teller county for probate by Mattie Snodgrass, executrix and a legatee under the will. Mrs. Billingsley, the testatrix, had been married but

was divorced from her husband at the time of the making of these instruments. She left surviving her, James Clarence Billingsley, her only child, as sole heir-at-law. He objected to the probate on several grounds, the two principal ones being lack of mental capacity of the testatrix to make a will, and undue influence exerted over her by the proponent. The hearing on this contest in the county court resulted in a judgment sustaining the will and admitting it to probate. From that judgment the contestant appealed to the district court, and there, upon trial to the court with a jury, at the close of proponent's evidence, the contestant offering none at all, the court, upon motion of the latter, directed the jury to return a verdict that the will and codicil are not the will and codicil of testatrix, which the jury did, and the court thereupon entered a judgment declaring them null and void and refusing to admit them to probate. From that judgment the proponent appealed to the court of appeals. After the appeal was perfected, the contestant died, and Curtis J. Smith, administrator of his estate, has been substituted as appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

In a will contest in the district court, upon an appeal from the county court, the parties are entitled to have the issues tried by a jury. This, however, does not mean that the court in every case must submit the issues of fact to a jury. On the contrary, the court has the same power in will contests to direct a verdict as in ordinary civil actions, subject likewise to the same limitations. The question, therefore, whether the court committed error in directing the jury to return a verdict in favor of the contestant is to be determined by the rules applicable in

ordinary civil actions.—*Clough v. Clough,* 10 Colo. App. 433; s. c. 27 Colo. 97; *In re Shell's Estate,* 28 Colo. 167, 16 Enc. Pl. & Pr. 1040, and cases cited; *Purdy v. Hall,* 134 Ill. 298; see, also, *In re Shapter's Estate,* 35 Colo. 578.

In every case a testator must know the contents of his will. Ordinarily, where the will has been executed under the formalities prescribed by law, and proof thereof has been made by the subscribing witnesses, the testator's bare signature to the will is taken as proof thereof, and it will be presumed that the will had been read by or to him, and that he was aware of its contents.—*Purdy v. Hall, supra;* 1 Underhill on Wills, § 137; 2 Mills' Ann. Stats. § 4670.

The burden of proof is primarily upon the proponent of a will to show its execution in accordance with the requirements of the law, and that the instrument is the free and voluntary act of the testator. Likewise, the burden of proof to show undue influence is upon the one who asserts it.

All of the evidence was clear to the point that the testatrix was of sound mind and memory at the time of the making of these instruments. No question was raised below as to the sufficiency of the proof upon this question, and appellee seems to concede her mental capacity. There was no direct evidence that any undue influence was exerted by proponent over testatrix at any time, and the only ground relied upon in the contestant's motion for a directed verdict (and supposedly it was upon that ground that the motion was granted) was that, since it was admitted by the proponent that she herself drew the will and wrote herself in as a legatee, thus taking a portion of the proceeds of the estate to the detriment of the natural heir, this circumstance required proponent, as a matter of law, to present

stronger evidence in relation to such will than is the rule in ordinary cases.

Such is, in effect, the language of the motion, but it seems from the briefs of counsel for appellee that his contention, fully stated, which the district court conceded, is that, in addition to proof by the subscribing witnesses that the testatrix executed the will in accordance with the formalities prescribed by statute, it was necessary to show that before she signed the will it was either read to or by her. And counsel further claims that the presumption of undue influence arising from the fact that proponent drew this will and was a legatee thereunder is a presumption of law of sufficient strength to warrant the court in refusing probate thereto.

It is doubtless true that in some of the opinions in cases where the scrivener of the will was executor and legatee, there are expressions bearing out this claim. But the better considered cases do not go so far. The better rule is that this circumstance at most raises a suspicion, strong or weak, or, in some cases, of no force at all, depending on all the attending circumstances, which should, in a proper case, cause the court to require of proponent, in addition to proof of formal execution, other clear and satisfactory evidence, not necessarily that the will was read to or by the testator, but that he knew its contents, and was free from undue influence. Perhaps the rule has never been more clearly expressed than by the learned Baron Parke in the leading case of *Barry v. Butlin*, 1 Curteis 637. In referring to a case like the one before us, and with respect to a contention similar to that made here, the learned judge said:

"If it is intended to be stated as a rule of law, that in every case in which the party preparing the will derives a benefit under it, the *onus probandi* is shifted, and that not only a certain measure, but a

particular species of proof is, therefore, required from the party propounding the will, we feel bound to say that we concede the doctrine to be incorrect. * * * And it cannot be that the simple fact of the party who prepared the will, being himself a legatee, is in every case and under all circumstances, to create a contrary presumption, and to call upon the court to pronounce against the will, unless additional evidence is produced to prove the knowledge of its contents by the deceased: * * * All that can be truly said is, that if a person, whether attorney or not, prepares a will with a legacy to himself, it is, at most, a suspicious circumstance of more or less weight, according to the facts of each particular case.''

In 1 Underhill on Wills, § 137, this language of Baron Parke is quoted with approval, and the learned author says: ''The safer and more correct statement of the rule is that such a condition of affairs creates no presumption, but merely raises a suspicion which ought to appeal to the vigilance of the court.''

See, also, 1 Jarman on Wills (6th ed.) 49; 1 Woerner on Administration (2d ed.) 51; 1 Williams on Executors (Perkins' Notes), bottom p. 112; Schouler on Wills (3d ed.), § 245; 29 Am. & Eng. Enc. Law (2d ed.) 114.

Had there been, at the trial, no other evidence than proof of formal execution, the circumstance that proponent wrote herself in as a legatee was not alone sufficient to avoid these instruments. The court might well have called for other proof of knowledge by testator of their contents, if none such had already been produced, and should have submitted the case to the jury with instructions appropriate to the case as made by all the evidence. But clearly erroneous was the directed verdict in view of other

pertinent evidence bearing on testatrix's knowledge of what the will contained, as a review of the salient parts of the evidence demonstrates.

The testatrix and proponent were first cousins. At the time of making the will they were engaged in the business of conducting a rooming and boarding house in the town of Victor. The testatrix had been seriously sick with what proved to be a fatal disease for several weeks before the will was made, and died about two weeks thereafter. Proponent was a good friend of testatrix and nursed and took care of her during her last illness, and had charge of, and managed, their joint business. One of the witnesses testified that two or three days before the will was signed by the testatrix, she told him that she had made a will and wanted him to sign it as a witness. The will itself was attested by three subscribing witnesses. A few minutes before they were needed they were asked by proponent to come into the sick room to witness its execution. After they arrived, the testatrix, who was weak in body, but, as the witnesses say, exceptionally bright in mind, was lifted into a sitting posture, and the will, which was in her chamber, was handed to her, and before she signed it she herself wrote at the bottom of the last page these words: "I declare this to be my last will and testament," and remarked in the presence of all the witnesses, "It is very poor handwriting, but I guess it can be read."

The date of the will was November 14, 1900. The codicil was made November 22 of the same year. About the day of the execution of the codicil the testatrix asked a Mrs. Archibald to witness it, and in connection with, or about the time of, this request, the testatrix told Mrs. Archibald that she had already made her will and given to the proponent $500 for nursing and taking care of her, and that she

did not think it was near paying proponent for her trouble, and at the same time, in response to a suggestion by Mrs. Archibald that a larger sum should be given to the son than the will gave him, the testatrix said that she had given him more than he deserved; that she did not think he was deserving because he had treated her so badly.

The will does not in terms purport to dispose of all testatrix's property, and there is no residuary clause. There are eight separate and distinct legacies, one of which was to the contestant. The value of the entire estate is not disclosed in the will or by the evidence, or of the legacy to proponent, which consists of several items, further than the $500 in money which is bequeathed to her, so that the proportionate value of proponent's legacy, as compared with the entire estate, is not made to appear.

As has already been observed, there is no direct testimony that, at any time, any undue influence either existed or was exerted by proponent, and the existence of an opportunity therefor creates no presumption against the will.—*In re Shell's Estate, supra;* 1 Underhill on Wills, § 130. The claim by contestant is that this undue influence is shown from the facts that proponent drew the will and wrote herself in as a legatee; that she was the friend, nurse and business partner of testatrix, who was very sick at the time; that her legacy was a detriment to the interests of the sole heir; and in the absence of direct proof that the will had been read to or by her, or that she knew its contents before she signed it, undue influence was established, and the will was, therefore, void.

We have already said that these circumstances might be considered as suspicious, and cause the court to require further proof than the mere testimony of the subscribing witnesses that the testatrix

knew the contents of the will, had none such been heard when the motion to direct a verdict was made. Such independent proof, however, was then before the court, and the jury should have been given an opportunity to pass upon it. Mrs. Archibald says that testatrix told her about a week after the will was made that she had given proponent $500 as part compensation for services rendered and to be rendered, and this certainly was some evidence that she knew what the will contained, for she could not state the contents of the instrument unless she had previous knowledge of it. And Mrs. Archibald's testimony that testatrix explained why she had not bequeathed more to her son also tends to show previous knowledge. Such subsequent declarations of a testator have been held admissible, merely for the purpose of showing, where the charge of undue influence was made, that the testator knew the contents of the instrument.—1 Redf. on Wills, 566, §§ 14 and 15; *Robinson v. Brewster,* 140 Ill. 649.

It is not true, as contestant says, that the fact that proponent was the cousin and friend, the nurse and business partner, of testatrix, gave rise to a fiduciary relation between them. The contrary has been expressly ruled.—*Richardson v. Bly,* 181 Mass. 97; Schouler on Wills (3d ed.), § 246; *Brooks' Estate,* 54 Cal. 471.

The writing by the testatrix of the words at the bottom of the will before she signed it, while not conclusive that she knew what she was doing, has a tendency to show that she knew the contents of the instrument to which she was affixing her signature. The particularity with which the will describes the various items given to each of the eight legatees, the place where these bequeathed articles were located, and the names and addresses of the objects of her bequests, tends to show that from testatrix her-

self was such information derived, and that she knew the contents of the instrument she signed. It is sufficient for the purpose of this case to say that there was evidence, in addition to the testimony of the subscribing witnesses, which, if believed by the jury, would uphold a verdict that the testatrix knew the contents of the will, and acted of her own free will in making it, it being conceded that she had sufficient mental capacity at the time she signed it. The evidence upon which contestant relies to show undue influence or ignorance of contents consisting, at most, only of alleged suspicious circumstances, and proponent's testimony being what we have just stated, the court should have submitted to the jury, under appropriate instructions, the controverted questions for their finding.

There is an additional reason why the direction of a verdict was improper. There were eight distinct legacies in this will, neither one, in any sense, dependent on any of the others, each entirely separate from the others, and it is not even claimed by contestant that any of the legatees except proponent was guilty of any fraud or undue influence in procuring the making of the will; hence, even if the will was void as to proponent, it does not necessarily follow that it was void as to the other legatees. Where such conditions exist, the will should not have been refused probate as to the undisputed legacies, certainly without affording these legatees an opportunity to be heard, and the proponent, as the executrix of the will, is in a position to urge this objection to the unwarranted direction to the jury.—1 Underhill on Wills, § 159.

In addition to the foregoing authorities, the following will be found in support of our conclusion: *Taylor v. Cox,* 153 Ill. 220; *Robinson v. Brewster,* 140 Ill. 649; *Shailer v. Bumstead,* 99 Mass. 112; *In*

*re Smith's Will*, 24 N. Y. Supp. 928; 1 Taylor on Evidence (4th ed.), § 130; *McCommon v. McCommon*, 151 Ill. 428; Schouler on Wills (3d ed.), § 248.

The judgment should be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.          *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.