[No. 3834.]

MILLER v. WESTON ET AL.

1. COUNTY COURT—*Jurisdiction—Presumptions.* The county court, in the administration of the estate of deceased persons, is a court of general and unlimited jurisdiction.

It acquires jurisdiction of a particular estate by proof of the death, and petition for letters of administration thereon, or letters testamentary.

The question of the residence of the decedent is a question of fact, to be determined by the evidence, and, nothing appearing to the contrary in the record, it will be presumed that the court examined and determined the question in favor of its jurisdiction.

The jurisdiction, once acquired, continues until lawfully divested, and this without regard to the probate of an alleged will of the decedent, which is but one incident of the jurisdiction of the subject matter.

2. —— *Objections to the Jurisdiction—Time of.* The provisions of Rev. Stat., sec. 7102, that administration of the estate of every decedent shall be had in the county court of his last known residence is mandatory; but it may nevertheless be waived. The county court of Park having assumed jurisdiction of the probate of the will of a decedent, a

contestant appeared, filed a *caveat* denying the authenticity of the will,
and alleging the invalidity thereof upon various grounds; and, without
any mistake or inadvertence, proceeded to the trial of the issues joined
upon his *caveat*, without objecting in any manner to the jurisdiction of
the court. *Held* that he thereby waived all objection to the jurisdiction
of the court upon the ground that the county of Park was not the
county of the last known residence of the deceased.

3. APPEALS—*County to District Court—Effect.* Under sec. 7254 of the
Revised Statutes, an appeal lies to the district court from any final de-
termination of law or fact in the county court relating to the adminis-
tration of any decedent's estate, without interrupting proceedings as to
other matters, or submitting to the district court any question as to the
adminisration, or any other question than that, from the determination
of which the appeal is prosecuted.

4. VENUE—*Change of—Time of Application.* An application for the
change of the venue, first interposed after the issues have been made up
and the cause is ready for trial, is not in apt time.

   Stronger reasons dictate the importance and necessity of expedi-
tion in will contests, and other causes affecting the administration of
estates, than in ordinary civil causes.

5. —— *Local Prejudice.* An application for a change of venue, in a
will contest, on the ground of local prejudice, and for the convenience
of witnesses, is within the discretion of the trial court. Its determina-
tion will not be disturbed if no abuse of the discretion appears.

6. WILLS—*Contest—Directing Verdict.* In will contests, the court has
the same power to direct a verdict as in ordinary civil causes. Whether
error is committed is to be determined by the same rules in both cases.

7. —— *Interpretation.* The intention of the testator is to be ascer-
tained from the entire context of the will, and must be given effect if
not prohibited by law.

8. —— *Invalid Provision,* not so inseparably connected with other
valid clauses that if stricken therefrom the general purpose of the tes-
tator will be defeated, will be rejected, and the residue established.

9. PERPETUITIES—*The Rule Against,* in this state, prohibits the sus-
pension of the fee in lands, or the vesting of title to personalty, for a
longer period than that of designated lives in being at the time of the
death of the testator, and twenty-one years and nine months thereafter.

10. —— *Will Construed.* The testator bequeathed his entire estate
by words of present gift to certain relatives and friends, directing his
executors to convert all his property into money and make the distribu-
tion. He appointed persons named "executors of this, my will, and

trustees of my property, real and personal, and all rights and credits, to whom, *on the admission of this will to probate*, the title of my said property shall go, in trust, however, for the realization of said rights and credits, and the conversion into money of said real estate and personal property * * * and the distribution of all the proceeds," etc. In other provisions he enjoined upon the executors the immediate sale of all his property and the distribution of the proceeds. Except as produced by the words italicized, there was no suspension of the fee in lands, the vesting of the title to the personalty,. nor of the power of alienation. *Held* that the will must be read in connection with the statute (Rev. Stat., sec. 7088); that the words "on the admission of this, my will, to probate" have no other or different effect, in substance, than the words of the statute; that considering the other provisions of the statute, requiring the executors to institute proceedings for the probate of the will within thirty days after the testator's death (Rev. Stat., sec. 7103), a presumption should be indulged that the will will be admitted to probate, certainly within the period of some life in being and twenty-one years thereafter, and, there being no precedent life estate, such presumption should be so conclusive that the bare possibility to the contrary should not be regarded as involving a violation of the rule against perpetuities.

*Held* further, that the words "to whom, on the admission of this, my will, to probate, the title of my said property shall go," may be rejected, and that, rejecting this clause, a valid power in trust to sell, convert and distribute was created and that the will, as a whole, might be sustained, without the. offending clause.

*Appeal from Park District Court.* HON. CHARLES CAVENDER, Judge.

Mr. JOHN T. BOTTOM, Mr. EDWARD C. STIMSON, Mr. GEORGE A. MILLER, *pro se,* for appellant.

Mr. G. K. HARTENSTEIN and Mr. M. I. O'MAILIA for appellees.

KING, J., delivered the opinion of the court.

This case presents for determination the contest of a written instrument purporting to be, and presented for probate as, the last will and testament of David F. Miller, who died in Canon City in December, 1906. Miller was

a pioneer of Park county, Colorado, having lived there
continuously from 1862 until about the year 1900, after
which time he appears to have made his headquarters in
Denver. That he left Park county and came to Denver
with the intention of changing his domicile from Park
county, where he had resided for almost forty years, does
not appear. He had no family dependent upon him at
that time. His wife had died, and the other members of
his family (his son and three foster children) were grown
and had established homes of their own. While in Den-
ver, Miller lived in the family of others, and made no
attempt otherwise to establish a home of his own in that
city. He made frequent trips to his ranch in Park county,
and spent considerable time there. The record does not
disclose the relative portion of the time spent in Denver
and upon the ranch, but apparently he would go back and
forth between Denver and his ranch, during the summer
months, and on different occasions visited in California.
The record is silent as to the circumstances of his death,
or how long he had been in Canon City at the time of that
event. We infer, however, that he was there temporarily.
Whether he was a resident of the City and County of
Denver at the time of his death, or that Park county was
still "the county of the last known residence of such tes-
tator," is urged as one of the important questions for
our determination. Some of the records of the county
court which should have been certified to the district
court, and presumably were lodged therein, are not pre-
served in the transcript, and therefore some matters are
indefinite, such as dates when and just what proceedings
actually took place in the county court. It appears from
the certificate of the clerk of the district court that there
had been filed in his office "a certain appeal bond in an
appeal from a judgment of the county court of said state
in and for said county of Park, together with a transcript
of said judgment, and the pleadings and files in a certain

cause theretofore pending in said court entitled, "In the Matter of the Last Will and Testament of David F. Miller, Deceased," but no part of said transcript from the county court appears in this court, with the exception of an amended caveat and demurrer thereto, the order overruling the demurrer, and the answer to the amended caveat. However, it is admitted that after the death of David F. Miller, the appellees, who are named as executors and trustees in the will, presented to the county court of Park county what purported to be the last will and testament of said David F. Miller, and that the person named as executors were by the said court appointed administrators to collect pending the probate of the will. It is shown that George A. Miller, the appellant, filed his caveat at some date not shown by the record, and on January 18, 1909, his amended caveat, in which he alleged that the paper writing presented as the will of David F. Miller was not his will, nor the codicil his codicil; that at the time of executing the same, the testator was not capable of executing a last will and testament and codicil, and, if executed, they were executed under undue influence of certain persons in said caveat named; and, further, that said paper writing, if a will, is void for that it violates the law and rule of perpetuities. Upon this caveat and the answer thereto the issues were made and trial had, resulting in a judgment sustaining the will, and admitting it to probate. From said judgment an appeal was taken to the district court of Park county. In pursuance of said appeal, the transcript, as it appears herein, was filed in the district court April 10, 1911. On May 22, 1911, the case came on for trial in the district court, resulting in a judgment rendered and entered upon a verdict directed by the court, sustaining the will. From said judgment, the case is brought to this court on appeal. There is nothing in the record to explain the delay from December, 1906, the date of testator's death, to April 10,

1911, when the papers on appeal were filed in the district court, which time, unexplained, seems unduly long.

## I.

When the case was called for trial in the district court May 22, 1911, appellant for the first time interposed a motion for change of venue to the City and County of Denver. This motion was based upon the grounds (1) that Park county was not the proper county for probate of the will, because, as it was alleged, the testator at the time of his death was a resident of Denver, and that the greater part of his personal estate was kept and found in the City and County of Denver; (2) that the contestant could not have a fair trial in the county of Park, because of the interest of the district judge of said county in the subject matter of the litigation, and of his undue influence tending to prejudice the people of the county against contestant; (3) of convenience of witnesses. This motion was overruled, and error is assigned thereon and urgently insisted upon, both in the written briefs and oral argument.

The provisions of two statutes are involved in this motion, *viz.*, sections 7900 and 8043, Mills' Ann. Stats. 1912 (7102 and 7254, Rev. Stats. 1908).

"The administration of all estates of persons dying testate or intestate, and of all minors and persons mentally incompetent, shall be had in the county court of the county of the *last known residence* of such testator, intestate, minor or mental incompetent, or if he had no residence in this state, then in the county court of the county wherein his personal estate or the greater part thereof may be found, but if he left no personal estate, then in the county court of the county wherein his real estate, or the greater part thereof, is situated." * * * —Section 7900, Mills' Ann. Stats. 1912; 7102, Rev. Stats. 1908.

"All questions of law and fact, relating to probate matters, or arising in proceedings under this act, in any county, shall be determined by the county court of such county, and from any and all final judgments or decrees upon any such questions, appeals or writs of certiorari shall lie to the district court of the same county, and from the district court to the court of appeals or supreme court, or from the county court to the court of appeals or supreme court, as in other cases, to be allowed, and prosecuted in the same manner as appeals or writs of certiorari, respectively, when prosecuted in civil or law cases from the decisions of such county or district courts; * * * In all such appeals it shall be the duty of the appellate court, when any such question shall have been finally passed upon, to transmit, or cause to be transmitted, by the clerk thereof, to the county court from which such appeal was taken, a transcript showing the disposition of such appeal, whereupon such county court shall proceed in accordance with such finding, order or disposition thereof by such appellate court."—Section 8043, Mills' Ann. Stats. 1912; 7254, Rev. Stats. 1908.

Appellant's motion was supported by his affidavit, that all of the personal effects of the testator at the time of his decease were, and for a long time prior thereto had been, in the City and County of Denver, except a few things that he had left on a ranch in Park county, "and that he had taken up his home in said City and County of Denver." This affidavit was not disputed by any counter-affidavit offered directly for that purpose. Appellant's contention is that the provisions of section 7900, that the administration of all estates of persons dying testate or intestate shall be had in the county court of the county of the last known residence of such testator or intestate, are mandatory, and cannot be waived; that, therefore, on the filing of the motion and affidavit aforesaid demanding a change of venue, the district court was

deprived of jurisdiction, except for the purpose of grant-
ing the change. That the provisions of said statute are
mandatory is conceded, but it does not necessarily follow
that the motion may be first made in the district court,
nor that such requirement may not be waived. The
county court, in matters of administration of estates, is
a court of general and unlimited jurisdiction, and, there-
fore, if properly invoked, had unquestioned jurisdiction
of the entire subject matter, of which the probate of the
will is but one incident, and which jurisdiction, when
once acquired, would continue until lawfully divested,
without regard to the determination of the probate of the
will. Its jurisdiction over the special case, or particular
subject matter of an individual estate of some deceased
person, is acquired by proof of death, and petition for
administration, or letters testamentary, as the case may
be, which proof of death and petition form a part of the
pleadings. We think that the question of the jurisdiction
of the county court over any particular estate must first
be raised in the county court and determined there, and,
if not so raised and determined and an appeal therefrom
taken, it cannot thereafter, ordinarily, be raised in the
district court, or elsewhere than in the county court, un-
less the defect of jurisdiction appears upon the face of
the pleadings filed in the county court, so that the records
of that court, transmitted to the district court, affirma-
tively show a lack of jurisdiction. The question of resi-
dence is a question of fact, which can only be determined
by evidence, and which, in the absence of a showing by
the record, must be presumed to have been ascertained
and determined by the county court in favor of such juris-
dictional facts. There is a marked distinction between
the provisions of the statute relative to the practice in
appeals from the county court in ordinary civil matters,
and appeals in probate matters, which will be observed
by reading the statute quoted (section 8043, *supra*). It

is evident from such provisions that a judgment upon
any question, either of law or of fact, determined by the
county court in probate matters may be appealed to the
district court, without interrupting the proceedings as to
other matters not appealed from, or submitting to that
court the pleadings or process pertaining to, or the ques-
tion of the general administration, or any other question
than the one determined and appealed from. A further
distinction (between appeals in civil cases and those in
probate matters) is found in the closing part of section
8043, in this, that the appellate court, after deciding any
such questions brought to it upon appeal, shall transmit
a transcript of its record showing the disposition of the
appeal, upon which the county court must proceed in ac-
cordance with such finding. In the case at bar, two issues
only were made by the pleadings—that is, by the caveat
and answer thereto—one of fact, to-wit, was the paper
writing presented the will of David F. Miller?—one of
law, to-wit, if the writing was found to be such will, was
it void as offending the rule against perpetuities? No
other question relevant to the administration or of pro-
bate of the will was appealed from, as shown by this rec-
ord. The jurisdiction of the district court was purely
derivative, acquired by the appeal, and the appeal raised
no question of law or fact not raised in the county court,
there determined and appealed from, or that is incident
to the main question.

Furthermore, we think, and hold, that the jurisdic-
tion of the county court in probate matters, depending
upon the residence of the testator or intestate, is one that
may be waived by the heirs of intestate, or the heirs and
beneficiaries named in the will of testate estates, and that
the question of such jurisdiction was waived by the ap-
pellant. The administration of this estate had been pend-
ing in the county court for more than two years after ap-
pellant filed his amended caveat, which constituted his

pleadings in this case, and must have been pending for a considerable time prior thereto. He voluntarily submitted himself to the jurisdiction of that court and permitted the administration to proceed, without a suggestion that it was not the proper county, and took and perfected an appeal from that court to the district court. That his submission to the jurisdiction of the county court was not through mistake or inadvertence is shown by his affidavit for change of venue filed in the district court, wherein he alleges that he consulted his attorney with regard to asking for a change of venue, and had been advised not to make such application. The proceedings in the administration of an estate, particularly with reference to the probate of a will, and the determination of claims presented, are analogous to the trial of civil causes on questions of law and of fact, and we know of no reason why the uniform ruling of the supreme court and court of appeals of this state, that the place of trial, and the right to have a change is a privilege, and not a vested right, and may be waived, and, if a motion for change of venue is not made in apt time, the right, although mandatory, is waived, should not apply with equal or greater force.—*Fletcher v. Stowell,* 17 Colo., 94, 28 Pac., 326; *Forbes v. County Com. of Grand County,* 23 Colo., 344, 47 Pac., 388; *Burton v. Graham,* 36 Colo., 199, 84 Pac., 978; *Phoenix Indem. Co. v. Greger,* 39 Colo., 193, 88 Pac., 1066; *Kirby v. U. P. Ry. Co.,* 51 Colo., 509, 541, *et seq.,* 119 Pac., 1042, Ann. Cas., 1913B, 461; *Smith v. People,* 2 Colo. App., 99, 29 Pac., 924; *Pearse v. Bordeleau,* 3 Colo. App., 351, 33 Pac., 140; *Smith v. Morrill,* 12 Colo. App., 233, 241, 55 Pac., 824; *School Dist. v. Waters,* 20 Colo. App., 106, 77 Pac., 255. The question of jurisdiction of the county court, raised for the first time in the district court, even if it could be so raised in that court, was not made in apt time. It was not made until all the pleadings had been made up, the cause was ready for

trial, and the parties, witnesses and jurors in the court. The reason for holding that the question of jurisdiction of the county court upon matters such as are presented here may be waived, and if not presented in apt time will be so held, is much stronger in view of the importance and necessity of expedition in closing the administration of estates than in ordinary civil cases. This importance and necessity is recognized both by the courts and by express statutory injunction. It would be a reproach upon the law if persons contesting the administration of an estate, or contesting a will, could submit to the jurisdiction of the probate court for the length of time herein disclosed, and then successfully raise the question. Estoppel should apply if waiver were inapplicable. The motion on the ground of prejudice, or convenience of witnesses, was a matter within the discretion of the court. It does not appear that its discretion was abused.

## II.

Counsel for appellant denies the right and authority of the trial judge to direct a verdict in a case involving the validity of a will. This point has been determined adversely to the contention of appellant in *Snodgrass v. Smith,* 42 Colo., 60, 62, 94 Pac., 312, 15 Ann. Cas., 548, in which our supreme court expressly ruled that the court has the same power in will contests to direct a verdict as in ordinary civil cases; and that, whether a court, in directing the jury to return the verdict, commits error is to be determined by the rules applicable in ordinary civil cases. See also, *In re Shell's Estate,* 28 Colo., 167, 63 Pac., 413, 53 L. R. A., 387, 89 Am. St. Rep., 181; *Butcher v. Butcher,* 21 Colo. App., 416, 122 Pac., 397; *In re Carey's Estate* (Sup.), 136 Pac., 1175. We discover no evidence in the record to support the allegations of the caveat that testator was not of sound and disposing mind when he executed his will, and there is no evidence whatever that

undue or any influence adverse to appellant was exerted over the testator by the persons named in the caveat, or any other person. That the will offered expressed the testator's mature wishes with reference to the final disposition of his property cannot be questioned by any disinterested person who reads the record. If the jury had returned a verdict adversely to the proponents of the will upon the evidence adduced, it would have been the duty of the trial judge, as stated in his remarks to the jury, to set the verdict aside. Therefore, in directing a verdict, the court not only exercised a right which it possessed, but a duty which it was under obligation to perform.

### III.

The last contention made by appellant is that, upon its face, the will violates the rule against perpetuities, and is therefore against public policy and void. In the printed briefs, as well as upon oral argument, this question was urged as the most important of any, and decisive of the contest; but in our opinion the point raised, on which the offense against the rule is predicated, as applied to the will in this case, is highly technical—abstract and academic rather than substantial, because, whatever may be the decision upon that point, the will may be sustained. His contention is based upon the rule against perpetuities in force in this state, which prohibits the suspension of the fee to real estate, or of the vesting of title to personalty, for a longer period than that of designated lives in being at the time of the death of the testator, and twenty-one years and nine months thereafter; or, as the rule is sometimes expressed, "No interest is good unless it must vest, if at all, not later than twenty-one years and a fraction after some life in being at the creation of the interest."—Gray on Rule Against Perpetuities, 201. The will, after providing for payment of the funeral expenses and debts, bequeathed the entire estate, by words of pres-

ent gift, to certain beneficiaries, to-wit: to testator's two sisters, $800 each, if living at time of testator's death, otherwise to their children; to a faithful domestic, $500; to one foster son, $3,000, to another $1,200; (as to last three named, to lapse if legatee not living at time of testator's death;) to a foster daughter, $1,500, if living at testator's death, if not, to her children; to his son, the contestant, $3,000, if living, if not, to his children and divorced wife, or the survivors of them; to each of the four sons of contestant, $300; the residuary estate, if any, to go to the son, and foster sons, and daughter, in fixed proportions, etc., and directed the executors therein named to convert all property into money and make the distribution. The paragraph of the will which appellant insists is in violation of the rule is as follows:

"I hereby constitute William E. Weston and I. S. Smith of Fairplay, Colorado, and either of them, should the other be dead or refuse to act, executors of this will and trustees of my property; real and personal, and all right and credits, to whom, *on the admission of this will to probate,* the title and ownership of my said property rights and credits shall go, in trust, however, for the realization of said rights and credits and the conversion into money of said real estate and personal property according to their best ability and judgment under the supervision of the court of probate, and for the distribution of all the proceeds, after first paying my funeral expenses and my debts as above directed as well as all expenses of administration, including full compensation to my said executors as next hereinafter stated."

In *Chilcott v. Hart,* 23 Colo., 40, 45 Pac., 391, 35 L. R. A., 41, Mr. Justice Campbell discusses in a most scholarly manner the law, ancient and modern, pertaining to perpetuities, and the permissible construction of a will so as to give it force and effect when it consists of parts

that are valid and parts that are invalid, when construction is demanded for the purpose of overthrowing it.

As in that case, this is an action to overthrow the will. Counsel for appellant insists that the will is void because (a) of the clause in the paragraph quoted and italicized, to-wit, "to whom, *on the admission of this will to probate,* the title and ownership of my said property rights and credits shall go," etc., which he insists makes the time of the vesting of the estate in the executors as trustees indefinite, and (b) the vesting of the title of any legatee or beneficiary under the will is left to the uncontrolled judgment of the trustees. It is said that neither the vesting of the title primarily in the trustees, nor ultimately in the beneficiaries, *must* happen within twenty-one years and a fraction after some life or lives in being, and that the bare possibility that the estate may not vest within that time makes, not only the clause, but the entire will, void; in support of which appellant cites Gray on Perpetuities (2nd éd.), sec. 201; *Johnson v. Preston,* 226 Ill., 447, 80 N. E., 1001, 10 L. R. A. (N. S.), 564; *Tilden v. Green,* 130 N. Y., 29, 28 N. E., 880, 14 L. R. A., 33, 27 Am. St., 487, and other cases. The case of *Johnson v. Preston* is chiefly relied on because of the use of the words contained in the will there under discussion, to-wit:

"I give and devise to my executor hereinafter named, in trust, for the purpose and for the time hereinafter mentioned * * * my farm * * * to have and to hold for the space of twenty-five years *from and after the date of the probate of this will* * * * with no power of sale, conveyance or alienation of said land during said twenty-five years by said trustee * * * ," and the holding of the court that because of the language quoted, the trust estate attempted to be vested in the executor offended the rule against perpetuities, and was therefore void. The striking similarity in the two phrases

"on the admission of this will to probate" and "from
and after the date of the probate of this will" as used in
the respective wills, and the respect which is paid to de-
cisions of the supreme court of Illinois, gives its ruling
great force and influence with this court, even though we
are unable to agree with the conclusion of that court,
that the words "from and after the probate of this will,"
of themselves (if such was its conclusion), violated the
rule against perpetuities to the destruction of the trust
there attempted to be created. We think, however, that
there is a marked distinction between the will in that
case and the will in this, as a whole, that the similarity
is more apparent than real, and that such distinction af-
fects the allowable construction as to the estate or power
attempted to be created in the trustees, and in determin-
ing when the trust estate would vest. In the Johnson
case there was an express and unequivocal intention to
take the property out of commerce by vesting the title
in the trustee, *with no power of sale* or alienation, and
to suspend the ultimate vesting of the fee in the bene-
ficiaries for the full period named, and while the suspen-
sion of alienation had no effect on the time the title
should vest in the trustee, it may affect the construction
in ascertaining the intention of the testator and giving
such intention its proper effect. That distinction was
made in *Armstrong v. Barber*, 239 Ill., 389. By the will
at bar, not only is there no tying up of the property, no
suspension of the power of alienation or vesting of title
except as produced by the words "on the admission of
this will to probate," but the trust attempted to be
created is for the express purpose of effecting immediate
realization on the credits, and conversion of all the other
property, both real and personal, into cash, and the ap-
plication of the proceeds, first to the payment of funeral
expenses, debts, and cost of administration, and then
distribution of the balance to the beneficiaries in the will.

The paramount rule in the construction of wills, to which all others must yield, is that the intention of the testator as expressed in the will must be ascertained and given effect if not prohibited by law.—*Bacon v. Nichols,* 47 Colo., 31, 105 Pac., 1082; *University v. Wilson,* 54 Colo., 510, 131 Pac., 422; *Armstrong v. Barber,* 239 Ill., 389, 394, 398, 88 N. E., 246; *Orr v. Yates,* 209 Ill., 222, 70 N. E., 731; *Chilcott v. Hart,* 23 Colo., 40, 45 Pac., 391, 35 L. R. A., 41; *Tilden v. Green,* 130 N. Y., 29, 28 N. E., 880, 14 L. R. A., 33, 27 Am. St. Rep., 487; *Johnson v. Preston, supra.* The intention of the testator is not to be determined by any single phrase, clause or section in the will, but from the entire instrument. When the will is read as a whole, it is evident beyond controversy that there was not in the mind of the testator any purpose of taking the property out of commerce, or suspending the vesting of title in the trustees, or its alienation, beyond the date when first under the laws of this state the executors, either in their capacity as statutory administrators of the will, or as trustees under that instrument, could take the property by virtue of the will's becoming effectual by probate. In sections of the will subsequent to that quoted, prompt and expeditious, indeed immediate, sale and conversion of the property into money, and distribution thereof to the beneficiaries, is enjoined upon the executors. The intention of the testator is clear. But it is said that the object of the rule against perpetuities is to defeat the intention of the testator. This we concede, if the intention of the testator was to violate the rule; not otherwise. It is also true that the object of the rule is to defeat any portion of the will the effect of which would be to violate the rule, whatever may have been the intention of the testator. We think the words in that section of the will quoted and the meaning thereof should be read and construed in connection with the statute of wills, and when so read, the intention and

meaning is plain and its effect lawful. Sec. 7081, Rev. Stats. 1908, 7879 Mills' Ann. Stats., provides that all instruments purporting to be original wills, upon presentation for probate, shall be recorded by the clerk of the county court in a well-bound book, and that upon admission of such will to probate such record shall be sufficient. Sec. 7088, Rev. Stats. 1908, 7886 Mills' Ann. Stats., provides for proof of the will, and that "every will *when thus proven* and recorded by the clerk of the county court in a book to be provided by him for that purpose *shall be good, and available* in law for the *granting, conveying and assuring the lands,* tenements and hereditaments, annuities, rents, *goods and chattels therein and thereby given, granted, devised and bequeathed."*

The words of the will that "on the admission of this will to probate, the title and ownership of my said property rights and credits *shall go"* to the trustee, have no other or different meaning than the language of the statute last quoted, in substance, that upon the admission of the will to probate and record, it shall be good, and available in law for the granting, conveying and assuring the property thereby granted, devised and bequeathed. Read together, it is evident that the intention of the testator was to conform to the provisions of this statute. If the will violates the rule against perpetuities, it does so by making the precise provision that the statute makes for every will. Under no circumstances or wording of the will could the estate vest in the trustee before the admission of the will to probate.—*New York Life Ins. Co. v. Brown,* 32 Colo., 365, 376, 76 Pac., 799.

Moreover, under said statutes and others mandatory in terms, requiring the presentation of wills for probate within ten days (sec. 7800, Mills' Ann. Stats.), and the commencement by the executors of proceedings to cause such will to be proven within thirty days (sec. 7900, Mills' Ann. Stats.) "enforced by the sanction of compulsion,"

subject to fines and penalties, we think that, in construing this will, the presumption should obtain that if valid the will will be admitted to probate in a reasonable time, and well within the period of some life in being and twenty-one years thereafter, or within twenty-one years, where, as in this case, there is no precedent life estate, and that such presumption should be so conclusive that the bare possibility that it would never be presented, or, if presented and valid, would not be admitted to probate within twenty-one years, should not be regarded in this state as violating the rule against perpetuities.

We are reluctant, to the point of unwillingness, to follow *Johnson v. Preston, supra,* as a precedent, if the effect of adopting the construction there given would be to defeat the will now under consideration *in toto;* but if we concede that the words ''to whom, on the admission of this will to probate, the title and ownership of my said property rights and credits shall go in trust'' offends the rule against perpetuities, and defeats the trust estate attempted by said clause to be vested in the trustees, nevertheless, we think a *valid power in trust* to sell, convert and distribute was created, and the will as a whole may be sustained with the offending phrase, clause or provision eliminated or disregarded, and that it may be stricken out. The general rule is that where certain items in a will are valid and others are invalid, unless the valid portions are so inseparably connected with the other parts of the will that if stricken therefrom the general scheme of the testator will be defeated, the will as a whole should not be considered void.—*Chilcott v. Hart, supra; Tilden v. Green, supra; Johnson v. Preston, supra; Henderson v. Henderson,* 113 N. Y., 1, 20 N. E., 814. In *Tilden v. Green,* the principle has been thus expressed:

''If several trusts are created by will which are independent of each other, and each complete in itself,

some of which are lawful and others unlawful, and which may be separated from each other, the illegal parts, although void, may be cut off and the legal ones permitted to stand.''

In *Chilcott v. Hart, supra,* at page 50, it was said:

''If, however, we should agree with appellants that each one of these items is incapable of enforcement, and therefore void for uncertainty, we are clearly of the opinion that all of them might be stricken from the will without impairing its integrity as a whole, or without affecting the general scheme of the testamentary disposition, or interfering with or defeating the evident general intent of the testator.—2 Schouler, part 6, chap. 1.''

Keeping in mind these general rules, an examination of this will discloses that the primary object of the testator was that all his property of every kind and character should be converted into cash immediately after his death, or as soon thereafter as the property could be sold without undue sacrifice, and without the delay or expense incident to sales under the usual processes required by the statute in intestate estates, and that the proceeds of such sale should be paid to the several beneficiaries named in the will, to each of whom, including the contestant, he made a bequest of a fixed amount, by words of *present gift;* with such object in view, he gave his executors full power to sell said property to the best of their ability and judgment, without the interposition of the court, and, as incidental and subordinate to the power to sell, attempted to vest the title in such executors as trustees, provision being made for the residuary estate if there should be an excess, and for ratable diminution if there should be an insufficiency to meet the specific legacies.

We conclude that the intention of the testator was to vest in his executors a power to sell or otherwise convert the property into money, make payment of debts

and expenses, and distribute the balance among the beneficiaries of the will, and that the provision that the title should vest in the trustees was subordinate to the paramount purpose. Holding that view, we also hold that the provision attempting to expressly vest the title in trust may be considered void, stricken out or disregarded, without changing either the effect of the will or the general testamentary scheme; object and purpose of the testator, and the power in trust may be sustained, although the other part should fall. "If the trust itself failed, but a valid power in trust was created, it may be executed."— *Tilden v. Green, supra* (page 50). It was not necessary that the testator should by express language vest the title in the executors in order to effectuate the execution of the trust power. If the power to sell was effectual, the title, so far as was necessary to effect that purpose, vested by operation of law.—2 Woerner on Administration, 716, 718, 719; 1 Jarman on Wills, 261, 262; *Ebey v. Adams,* 135 Ill., 80, 25 N. E., 1013.

In the case of *Johnson v. Preston,* relied upon by appellant to avoid this will, the court, after holding the trust estate void, and striking from the will or disregarding all portions thereof containing the void trust clause, nevertheless gave the will full effect, saying:

"If the trust should be upheld and given effect, the ultimate result would not be different from what it would be with the trust eliminated."

The same may be said in this case. It cannot be said that the interests of the beneficiaries are so interdependent with or upon the estate attempted to be given to the trustees that if their devise in trust fails it must pull the estate of the beneficiaries down with it.

## IV.

Neither under the trust nor under the power is the vesting of title in the beneficiaries left to the uncontrolled

discretion of the executors. The discretion vested in the trustees by the Tilden will, denounced as void in *Tilden v. Green, supra,* substituted for the will of the testator the will of the donees of the power. We have shown that no such discretion was given by the Miller will.

Other assignments of error have not been overlooked. The judgment will be affirmed.

Decided April 14, A. D. 1913. Judgment affirmed on rehearing February 11, A. D. 1914.